UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MAR 20 2025 PM 1:14
FILED-USDC-CT-HARTFORD

GAWLIK,JAN.M.

V.

GALLAGHER,COLLEEN,
DIRECTOR/ADA/COORDINATOR.
BLACKSTOCK,BRANE,
CAPTAIN/ADA/COORDINATOR.
DR.MALETZ/ORTHOPEDIC.
NUNEZ,CARLOS/DEPUTY WARDEN,
CHESHIRE.C.I.

ALL ABOVE SUED IN THEIR INDIVIDUAL/OFFICIAL/PRIVATE CAPACITIES.

CASE NO:____________________

# *ADA-COMPLAINT*
## (JURY-DEMAND)

## INTRODUCTION

THIS IS A CIVIL RIGHTS ACTION PURSUANT,42 U.S.C.§1983/ADA,FILED BY:GAWLIK-JAN.M.,A STATE PRISONER,FOR DAMAGES,COMPENSATORY DAMAGES,PUNITIVE DAMAGES,HEDONIC DAMAGES,GENERAL DAMAGES,DIRECT DAMAGES,42 U.S.C.§12202/STATE IMMUNITY PRIVATE DAMAGES,42 U.S.C.§1997e(e),/MENTAL & EMOTIONAL DAMAGES,ALLEGING-VIOLATIONS OF:TITLE III OF ADA AS A DISABLED INDIVIDUAL UNDER ADA-AMERICANS WITH DISABILITIES ACT,ADA-TITLE II,SECTION 504 OF THE REHABILITATION ACT OF 1973,("SECTION-504"),SECTION#1977/42 U.S.C.§1981,TITLE VII-OF THE CIVIL RIGHTS ACT OF 1964,CIVIL RIGHTS ACT OF 1991-TITLE I,SECTION#706,OR,717-OF THE CIVIL RIGHTS ACT OF 1964,42 U.S.C.§12117(a),&,SECTION#505(a)(1)-REHABILITATION ACT OF 1973,ADA/SECTION#102(b)(5),29 U.S.C.§794a,TITLE#28 U.S.C.§35.108-DEFINITION OF DISABILITY,TITLE#28 U.S.C.§35.130-GENERAL PROHIBITIONS AGAINST DISCRIMINATION/ALL-SECTIONS,TITLE#II-ADA/SECTIONS#42 U.S.C.§12131-TO-12134,42 U.S.C.§12112-DISCRIMINATION,CIVIL RIGHTS ACT OF 1964/SEC#2000e-7[SECTION-708].42 U.S.C.§12202-STATE IMMUNITY,28 C.F.R.§35.130(b)(1)-DISCRIMINATION,42-U.S.C.§1985/CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS,42 U.S.C.§1986/ACTION-FOR NEGLECT TO PREVENT,1st/AMENDMENT RETALIATION,DELIBERATE INDIFFERENCE,8th/-AMENDMENT,14th/AMENDMENT DUE PROCESS CLAUSE,14th/AMENDMENT-EQUAL PROTECTION-CLAUSE,18 U.S.C.§245/FEDERALLY PROTECTED ACTIVITIES,DUE PROCESS CLAUSE,PROCEDURAL DUE PROCESS,ETC,AND ANY OTHER ADA-VIOLATIONS DEEMED BY THIS COURT.

THE PLAINTIFF ALLEGES THE ABOVE FEDERAL VIOLATIONS WITHIN THIS FEDERAL CIVIL RIGHTS UNDER,42 U.S.C.§1983/ADA,COMPLAINT.(SEE:CGS§53a-181k/BIGOTRY-&-BIAS).

THE PLAINTIFF WILL CHRONOLOGICALLY ARTICULATE THE EVENTS,INCLUDING THE DATES,TIMES,ETC,AS THEY TRANSPIRED OF THE FEDERAL CIVIL RIGHTS VIOLATIONS UNDER ADA.

PURSUANT TO:(RULE#20-PERMISSIVE JOINER OF PARTIES),THE PLAINTIFF IS JOINING ALL DEFENDENTS TO THE RELIEF THAT IS ASSERTED AGAINST THEM,JOINTLY,SEVERALLY,OR,IN THE ALTERNATIVE,WITH RESPECT TO OR ARISING OUT OF THE SAME TRANSACTION-

OCCURANCES,OR,SERIES OF TRANSACTIONS OR OCCURANCES;AND,ANY QUESTION OF LAW OR FACT COMMON TO ALL DEFENDENTS WILL ARISE IN THE ACTION. THE PLAINTIFF REQUESTS THE COURT TO CAREFULLY SCRUTINIZE THE FOLLOWING VIOLATIONS/RIGHTS.

## JURISDICTION

1.) THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE PLAINTIFFS CLAIMS AND VIOLATIONS OF FEDERAL CONSTITUTIONAL RIGHTS UNDER:42 U.S.C.§§1331(1)/1343.

2.) THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFFS STATE LAW VIOLATIONS UNDER:28 U.S.C.§1367.

3.) THE COURT HAS SUBJECT MATTER JURISDICTION PURSUANT UNDER:RULE#20-PERMI SSIVE JOINER OF PARTIES.

## PARTIES

4.) THE PLAINTIFF,(GAWLIK,JAN.M.),WAS/IS INCARCERATED AT CHESHIRE.C.I.,(CCI), DURING THE EVENTS DESCRIBED IN THIS COMPLAINT.

5.) DEFENDENT-MS.GALLAGHER COLLEEN/DIRECTOR ADA/COORDINATOR,EMPLOYED BY THE STATE OF CONNECTICUT/CENTRAL OFFICE/DEPT.OF CORRECTIONS. SHE IS SUED IN HER INDIVIDUAL,AND,OFFICIAL,AND,PRIVATE CAPACITIES UNDER:42 U.S.C.§12202-STATE-IMMUNITY.

6.) DEFENDENT-MR.BLACKSTOCK BRANE/CAPTAIN/ADA-COORDINATOR,EMPLOYED BY THE ST-ATE OF CONNECTICUT/CHESHIRE.C.I./DEPT.OF CORRECTIONS. HE IS SUED IN HIS INDI-VIDUAL,AND,OFFICIAL,AND,PRIVATE CAPACITIES UNDER:42 U.S.C.§12202-STATE IMMU-NITY.

7.) DEFENDENT-DR.MALETZ/ORTHOPEDIC,EMPLOYED BY THE STATE OF CONNECTICUT/CHE-SHIRE.C.I./DEPT.OF CORRECTIONS. HE IS SUED IN HIS INDIVIDUAL,AND,OFFICIAL,AND, PRIVATE CAPACITIES UNDER:42 U.S.C.§12202-STATE IMMUNITY.

8.) DEFENDENT-MR.NUNEZ CARLOS/DEPUTY WARDEN/CCI,EMPLOYED BY THE STATE OF CONN-ECTICUT/CHESHIRE.C.I./DEPT.OF CORRECTIONS. HE IS SUED IN HIS INDIVIDUAL,AND, OFFICIAL,AND,PRIVATE CAPACITIES UNDER:42 U.S.C.§12202-STATE IMMUNITY.

## FACTS

9.) THE PLAINTIFF IS A DISABLED,"QUALIFIED-INDIVIDUAL",UNDER THE SOCIAL SECURITY ACT,AND,ADA-AMERICANS WITH DISABILITIES ACT SINCE 1996/YEAR,UNDER SECTIONS:216(i),AND,223,RESPECTIVELY,OF THE SOCIAL SECURITY ACT.

10.) THE PLAINTIFFS DISABILITY ORIGINATED ON:**JUNE 26th,1996**,DURING A WORK RELATED INJURY,WHILE LIFTING A SHOP METAL CONTAINER,INWHICH,IMMEDIATELY THE AREA OF:LOWER LUMBAR SPINE/L5-S1/DISC PROTRUSION,THAT CAUSED PLAINTIFF EXTREME PAIN TO A POINT OF UNCONSCIENCENESS OF PAIN RADIATING TO RIGHT LEG/FOOT.

11.) THE TREATING ORTHOPEDIC SURGEON:STANLEY P.FILEWICZ,WROTE:JULY 13th,1998, FIRST SEEN IN JULY 1996,THROUGH,MARCH 24th,1997,STATED:(QUOTE);"HE WAS NOT CAPABLE OF WORKING AT ALL",HAVING ATTEMPTED WORK BRIEFLY WITH SEVERE PAIN.

12.) AN MRI,AUGUST 12th,1996,DEMONSTRATED DEGENERATIVE CHANGES,(DEGENERATIVE-DISC DISEASE),AT:L5-S1,WITH A CENTRAL DISC PROTRUSION.

13.) THE PLAINTIFF UNDERWENT A LAMINECTOMY/DISCECTOMY OPERATION EARLY:YEAR/1998,TO DECOMPRESS THE DISC PROTRUSION THAT CAUSED THE DISABILITY OF PLAINTIFF.

14.) THE NEUROSURGEON/JOSEPH AFERZON,MD.REPORTED:JULY 22nd,1998,STATED:(QUOTE); "THIS GENTLEMAN PRESENTS AFTER DISC SURGERY WHICH HAD ABSOLUTELY NO BENEFIT-FOR HIM." HE REMAINS WITH COMPLAINTS OF RADICULAR PAIN! HE IS STILL OUT OF WORK,AND,QUITE DEBILITATED BY HIS BACK PROBLEM!

15.) THE PLAINTIFF PRIOR TO SURGERY,UNDERWENT NUMEROUS FACET JOINT INJECTIONS OF:RIGHT,(L5-S1,L4-L5,L3-L4),OPERATIONAL INJECTIONS UNDER A FLUOROSCOPIC GUIDED SCOPE,BY:DR.JONATHAN KOST,MD.DATE:9/5/1997,TO THE LUMBOSACRAL SPINE WITH: 1cc OF,0.25%,MARCAINE,AND,10mg,OF DEPOMEDROL,INJECTED IN AT EACH FACET JOINT, THE INJECTIONS HAD NO BENEFIT FOR PLAINTIFF DUE TO THE PROTRUSION SEVERITY.

16.) THE NEUROLOGICAL SURGEON/DR.JOSEPH AFERZON,MD.DATED:DECEMBER 13th,2005, NOTES DICTATED THE FOLLOWING:"THIS GENTLEMAN PRESENTS IN FOLLOW-UP. HE UNDERWENT DISC SURGERY IN 1998.AT THAT TIME HE HAD A DISECTOMY DONE AT: L5-S1,ON THE RIGHT SIDE FOR RADICULOPATHY.HE ALSO PRESENTS WITH DEGENERATIVE DISC DISEASE AT:L5-S1,DISC.HE STATES THAT HIS BACK PAIN,AND,SETTLING OF DISCS HAVE RENDERED HIM A LITTLE MORE PAIN LATELY. AT THIS POINT,HIS DIAGNOSIS REMAINS UNCHANGED,AND,HIS CLINICAL COURSE REMAINS UNCHANGED.HE IS BEING TREATED FOR DEPRESSION WITH DR.BRODY AS WELL.IT SEEMS LIKE HE IS TOLERATING HIS CURRENT COURSE OF PAIN MANAGEMENT WITH DR.BRODY. (CONT...)

AT THIS POINT,HE WILL CONTINUE FURTHER MEDICAL MANAGEMENT,AND, PAIN COUNSELING,AND,THIS WOULD BE PRESENT FOR THE FORESEEABLE FUTURE. HIS ANTIDEPRESSANT MEDICATION SHOULD BE CONTINUED.I THINK HIS SYMPTOMS REMAIN STATUS QUO. I CONCUR WITH DR.BRODY-THAT HE SHOULD CONTINUE TO BE TOTALLY,AND,PERMANENTLY DISABLED.

PLAINTIFFS SOCIAL SECURITY ADMINISTRATION
OFFICE OF HEARINGS,AND,APPEALS
(DECISION)

17.) THE PLAINTIFF IN,(SHORT),WILL ARTICULATE THE FINAL DECISION OF THE SOCIAL SECURITY ADMINISTRATION RULING DATED:MAY 18th,2001,BY:HON./H.H.CLARK-ADMINISTRATIVE LAW JUDGE,OF THE OFFICE OF HEARINGS,AND,APPEALS.

18.) ON MAY 28th,1999,THIS CLAIMANT,(PLAINTIFF),FILED AN APPLICATION FOR DISABILITY INSURANCE BENEFITS UNDER THE SOCIAL SECURITY ACT..A REQUEST FOR HEARING WAS TIMELY FILED ON:SEPTEMBER 5th,2000,...A HEARING WAS SUBSEQUENTLY HELD ON: MARCH 19th,2001,IN HARTFORD,CT.,...APPEARING & OFFERING TESTIMONY WERE:CLAIMANT,ALLEGING DISABILITY BEGINNING:JUNE 26th,1996,DUE TO BACK INJURY WITH CHRONIC PAIN,AND,DEPRESSION. MR.THOMAS P.TABELLIONE/ATTORNEY REPRESENTS CLAIMANT.

19.) THE CLAIMANT,(PLAINTIFF),TESTIMONY WAS OFFERED TO THE ADMINISTRATIVE LAW JUDGE/H.H.CLARK,AND,THE SOCIAL SECURITY ADMINISTRATION FOUND THAT;

> THE CLAIMANTS CAPACITY FOR FULL RANGE OF SEDENTARY WORK IS REDUCED BY ADDITIONAL LIMITATIONS THAT NARROW THE RANGE OF WORK HE CAN PERFORM. SOCIAL SECURITY RULING§85-15,STATES:THAT A SUBSTANTIAL LOSS OF ABILITY TO MEET ANY ONE OF SEVERAL BASIC WORK-RELATED ACTIVITIES ON A SUSTAINED BASIS,(i.e.,8-HOURS A DAY,5-DAYS A WEEK,OR,AN EQUIVALENT WORK SCHEDULE),WILL SUBSTANTIALLY ERODE THE UNSKILLED SEDENTARY OCCUPATIONAL BASE,AND,WOULD JUSTIFY A FINDING OF:DISABILITY. GIVEN THE CLAIMANTS RESIDUAL FUNCTIONAL CAPACITY,WHICH IS FOR A VERY NARROW RANGE OF SEDENTARY WORK,AND,THE VOCATIONAL FACTORS OF AGE,EDUCATION,AND,PAST RELEVANT WORK EXPERIENCE,THERE ARE NO JOBS EXISTING IN SIGNIFICANT NUMBERS THAT THE CLAIMANT IS CAPABLE OF PERFORMING.
> THE CLAIMANT IS UNDER A DISABILITY IN ACCORDANCE WITH SOCIAL SECURITY RULING§85-15,AND,SECTION§201.00(h),OF THE MEDICAL VOCATIONAL GUIDELINES. A FINDING OF,"DISABLED",MAY THEREFORE BE REACHED WITHIN THE FRAMEWORK OF:MEDICAL-VOCATIONAL RULE§201.28.
> IN ACCORDANCE WITH A FINDING THAT THE CLAIMANT,(PLAINTIFF),HAS BEEN UNDER A DISABILITY BEGINNING:JUNE 26th,1996,HE IS ENTITLED TO DISABILITY INSURANCE BENEFITS ON THE BASIS OF HIS APPLICATION OF:MAY 28th-1999.

DECISION

IT IS THE DECISION OF THE ADMINISTRATIVE LAW JUDGE THAT,BASED ON THE APPLICATION FILED ON:MAY 28th,1999,THE CLAIMANT IS ENTITLED TO A PERIOD OF DISABILITY COMMENCING:JUNE 26th,1996,AND,TO DISABILITY INSURANCE BENEFITS UNDER SECTIONS-§§216(i),AND,223,RESPECTIVELY,OF THE SOCIAL SECURITY ACT.

H.H.CLARK/ADMINISTRTIVE-- LAW-JUDGE. DATED:MAY 18th,2001

20.) THIS PLAINTIFF PRESENTS TO THIS HONORABLE COURT,THAT HE IS A:DISABLED-"QUALIFIED-INDIVIDUAL",UNDER THE SOCIAL SECURITY ACT,REHABILITATION ACT OF 1973,TITLE II OF THE ADA,ADA-AMERICANS WITH DISABILITIES ACT,TITLE#28-PART#35-SUBPART(A)-§35.108/DEFINITION OF DISABILITY,ETC.

21.) THIS DISABLED,"QUALIFIED-INDIVIDUAL",IS PERMANENTLY DISABLED FOR HIS NATURAL LIFE,AND,DUE TO HIS AGE BECOMING AN ELDERLY INDIVIDUAL UNDER CONNECTICUT LAW OF AGE 60-YRS/OLD ON DATE:JANUARY 18th,2025/BORN ON:JANUARY 18th,1965,THE PLAINTIFFS DISABILITY CONDITIONS FALL INTO CATEGORY OF:INFIRMATY.

(EXHIBIT#(A1)-SOCIAL SECURITY DISABILITY DECISION/&/DOCTORS REPORTS-NOTES)

PLAINTIFFS INCARCERATION/OAP-OFFENDER ACCOUNTABILITY PLAN REQUIREMENTS WITHIN THE DEPT.OF CORRECTIONS-PROGRAMS

22.) THE PLAINTIFF WAS/IS INCARCERATED ON:OCTOBER 14th,2011,INWHICH UPON THE COMPLETION OF SENTENCING,PLAINTIFF,(DEFENDENT),IS EXPECTED TO ENROLL AND COMPLETE PROGRAMS WITHIN THE CONNECTICUT DEPT.OF CORRECTIONS,PURSUANT,(OAP),LANGUAGE,REQUIRED BY:BOARD OF PARDONS/PAROLES-FORM#CN9701.

23.) ON 1/13/2015,THIS PLAINTIFF,WAS IMPLEMENTED A CORRECTIONAL ASSESSMENT,ORIENTATION,&,CLASSIFICATION,AS TO HIS REQUIRED,(OAP-OFFENDER ACCOUNTABILITY-PLAN),WHICH IS THE PROGRAMS/SERVICES TO BE COMPLETED AS PART OF THE,(OAP),PROGRAMS WITHIN THE CONNECTICUT DEPT.OF CORRECTIONS.

24.) ON 1/13/2015,PLAINTIFF SIGNED HIS,(OAP),PROGRAM PLAN,AND,THE FOLLOWING PROGRAM LANGUAGE STATES:I HAVE REVIEWED THE ABOVE RECOMMENDATION,AND,UNDERSTAND THAT I AM EXPECTED TO ENROLL IN,AND,COMPLETE THE ABOVE PROGRAMS.
THE PROGRAMS ARE AS FOLLOWS;
1.) CODE#I1-TITLE:JOB ASSIGNMENT.
2.) CODE#26-TITLE:ANGER MGMT.
THE PLAINTIFF SUBMITS THE DEPT.OF CORRECTIONS,(OAP-OFFENDER ACCOUNTABILITY-PLAN),EXPECTED TO BE ENROLLED IN PURSUANT:BOARD OF PARDONS/PAROLES.

(EXHIBIT#(A2)-OAP/OFFENDER ACCOUNTABILITY PLAN-PROGRAMS).

THE PLAINTIFF,PURSUANT THE CORRECTIONAL,(OAP),DATED:1/13/2015, ENROLLS IN JOB ASSIGNMENT PROGRAM,REQUIRED AS PART OF THE OFFENDER ACCOUNTABILITY PLAN-OAP,

25.) THE PLAINTIFF,IN THE EARLY MONTHS OF,(2024),INFORMED CORRECTIONAL COUNSELOR/MR.MYLES BECKER TO ENROLL ME WITHIN THE DEPT.OF CORRECTIONS JOB ASSIGNMENT PROGRAM PURSUANT THE:(OAP-OFFENDER ACCOUNTABILITY PLAN). *NOTE:COUNSELOR-BECKER/NON-DEF.*

26.) ON OCTOBER 1st,2024,ANOTHER COUNSELOR,C.C./MR.CIAQUE SMITH,INFORMED ME THAT I AM NEXT ON THE JOB ASSIGNMENT PROGRAM/JOB LIST,ON 2nd-SHIFT AS A TIERMAN. *NOTE:COUNSELOR/SMITH-NONDEFENDENT*

27.) ON OCTOBER 1st,2024,THIS PLAINTIFF GENERATED AN INMATE REQUEST FORM/CN-9601,DIRECTED TO:ADA-COORDINATOR/CAPTAIN BLACKSTOCK,ARTICULATING AS FOLLOWS;

> CAPT.BLACKSTOCK/N1-UNIT MANAGER,
> MR.BLACKSTOCK,-I AM NEXT ON THE 2nd/SHIFT JOB LIST AS TIERMAN!
> I REQUIRE REASONABLE DISABILITY ACCOMMODATIONS,AS I AM A,"QUALIFIED-INDIVIDUAL",UNDER ADA,TITLE II,REHABILITATION ACT OF 1973.
> I REQUIRE ADA ACCOMMODATIONS FOR 2nd/SHIFT TIER JOB.
> PLEASE,INITIATE A MEETING FOR BOTH OF US TO STATE OUR POSITIONS WITHOUT INTERRUPTION,AND,ABUNDANT TIME.

28.) THERE WAS NO,"GOOD FAITH EFFORT",ON REASONABLE ACCOMMODATION INITIATED BY:ADA-COORDINATR/BLACKSTOCK,NOR,ANY CONSULTATION ON MY REQUEST AS A DISABLED PERSON WHO HAS INFORMED THE COVERED ENTITY THAT ACCOMMODATION IS NEEDED,WITH THE INMATE REQUEST FORWARDED TO ADA-BLACKSTOCK DATED:10/1/2024.

CIVIL RIGHTS ACT OF 1991/TITLE-I:STATES:SEC#102(A)(3);IN RELEVANT PART:

> ...IN CONSULTATION WITH THE PERSON WHOM THE PERSON WITH THE DISABILITY WHO HAS INFORMED THE COVERED ENTITY THAT ACCOMMODATION IS NEEDED,TO IDENTIFY,AND,MAKE A REASONABLE ACCOMMODATION THAT WOULD PROVIDE SUCH INDIVIDUAL WITH AN EQUALLY EFFECTIVE OPPORTUNITY...

ADA-COORDINATOR/BLACKSTOCK IGNORED THIS INDIVIDUAL,(GAWLIK), INMATE REQUEST DATED:10/1/2024,IN OBTAINING REASONABLE ACCOMMODATION WITHIN JOB PROGRAM,DUE TO PLAINTIFFS DISABILITY.

(EXHIBIT#(A3)-INMATE REQUEST TO ADA/BLACKSTOCK DATED:10/1/2024,ACCOMMODATION).

PLAINTIFF OFFICIALLY SUBMITS/REQUEST FOR REASONABLE ACCOMMODATIONS/CN101902/FORM,PURSUANT TITLE-II,&,ADA,SECTION#504RA.

29.) ON OCTOBER 2nd,2024,THIS DISABLED INDIVIDUAL GENERATED A,(REQUEST FOR-REASONABLE ACCOMMODATIONS/CN101902),DUE TO PLAINTIFFS PERMANENT IMPAIRMENTS UNDER THE SOCIAL SECURITY ACT/ADA,AS A DISABLED,(QUALIFIED-INDIVIDUAL).

30.) THE PLAINTIFFS CONDITIONS OF IMPAIRMENT WRE/ARE ARTICULATED AS FOLLOWS IN REQUESTING--REASONABLE ACCOMMODATIONS BELOW WITHIN THE R/A-REQUEST;

DESCRIBE THE CONDITION(S)AND SITUATION,(e.g.UNIT,CELL,PROGRAM,COMMUNICATION,OR,DAILY LIVING ACTIVITY),THAT PRESENT A NEED FOR ACCOMMODATION(S): THIS INMATE,AS A DISABLED,"QUALIFIED-INDIVIDUAL",UNDER THE ADA-AMERICANS WITH DISABILITIES ACT/TITLE II,REHABILITATION ACT OF 1973,AND,TITLE VII OF THE CIVIL RIGHTS ACT/1964,REQUIRES REASONABLE ACCOMMODATIONS & DUE TO PROSPECTIVE TIER WORKER IS UNABLE TO PERFORM CERTAIN TIER REQUIREMENTS WHICH INSTITUTE THE TWISTING OF LOWER BACK DUE TO:L5-S1/LAMINECTOMY,AND,TWISTING OF CERVICAL C5-C6,DUE TO PROTRUSION OF DISC AT BASE OF NECK AREA.

TYPE(S)OF SERVICE OR ACCOMMODATION REQUESTED/PREFERRED:

THIS INMATE AS A DISABLED,"QUALIFIED-INDIVIDUAL",UNDER,(ADA), ETC,AS PROSPECTIVELY EMPLOYED BY DOC/TIER WORKER IS REQUIRING UNDER REASONABLE ACCOMMODATION THAT THE CREDIBLE INMATE, DOC/JOB,THIS INMATE CAN,ONLY,PERFORM IS SWEEPING THE TIER,BOTTOM TIER ONLY,AND,WIPE THE TABLES AFTER INCARCERATED HAVE COMPLETED THEIR MEALS ON THE 2nd/SHIFT POSITION WHICH IS OFFERED TO THIS INMATE. INMATE CANNOT CLEAN SHOWERS,NOR,MOP FLOORS WHICH CONSISTS OF CONTINUAL TWISTING,BENDING,REACHING WITH A CONTINUAL FORCE WHICH CAUSES THIS DOCUMENTED DISABLED INDIVIDUAL EXTREME & PAINFUL CONDITION. DUE TO NO PHYSICAL THERAPY, GAWLIK MUST EXERCISE @ LEISURE INTERVALS. GAWLIK/10/2/2024.

31.) ON 10/17/2024,(15-DAYS),LATER,ADA-COORDINATOR/BLACKSTOCK,RESPONDED TO THIS PLAINTIFFS REQUEST FOR REASONABLE ACCOMMODATIONS AS FOLLOWS;

YOUR REQUEST HAS BEEN:(DENIED).

COMMENTS:INMATE,GAWLIK,JAN#138888,I SPOKE WITH DR.MALETZ,AND,REVIEWED YOUR MEDICAL CHART ABOUT ANY RELEVANT ISSUES ABOUT YOUR STRUCTURAL INTEGRITY,OR,ANY PHYSICAL BARRIERS YOU MAY HAVE TO PREVENT YOUR FROM PERFORMING NORMAL DUTIES IN THE CAPACITY OF A UNIT TIERMAN. INMATE GAWLIK THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN THE CAPACITY OF A TIERMAN. ADA-COORDINATOR/CAPT.BLACKSTOCK, 10/17/2024

32.) THE FINAL REASONABLE ACCOMMODATION DETERMINATION IS SUBJECT TO THE UNIT-ADMINISTRATOR,,(WARDEN),WHERE IN THIS PLAINTIFFS REASONABLE ACCOMMODATION WAS FINALIZED BY THE DEPUTY-WARDEN/C.NUNEZ,WHICH IS OUTSIDE THE DUE PROCESS SCOPE OF THE RESOLUTION ADMINISTRATOR,WHICH MUST BE THE WARDEN.

33.) THE DEP.WARDEN/NUNEZ ARTICULATED THE FOLLOWING;

REASONABLE ACCOMMODATION DETERMINATION,(DENIED),SEE COMMENTS BELOW:

COMMENTS: INMATE GAWLIK YOUR REQUEST FOR REASONABLE ACCOMMODATIONS WAS DENIED, UNIT ADMINISTRATOR/DEP.WARDEN, C.NUNEZ/10/19/2024

34.) THE PLAINTIFF ALLEGES THAT ADA/BLACKSTOCK NEVER SPOKE TO DR.MALETZ,&,THE FINAL RESPONSE ON ADA-ACCOMMODATIONS WAS GENERATED BY ADA-BLACKSTOCK,ONLY. (EXHIBIT#(A4)-PLAINTIFFS REASONABLE ACCOMMODATIONS REQUEST/10-2-2024)

PLAINTIFFS DISABILITY/IMPAIRMENT OF:C5-C6,CERVICAL SPINE DISC PROTRUSION,LIMITING MAJOR LIFES ACTIVITIES CAUSING DISABILITY

35.) ON OR ABOUT,AUGUST/2022,THE PLAINTIFF,OBTAINED AN,(MRI),FOR THE CERVICAL SPINE-C5-C6,REGION DUE TO DISC PROTRUSION CAUSING EXTREME PAIN & LIMITED MOVEMENT WHICH IS PERMANENT FOR THE NATURAL LIFE OF PLAINTIFF.

36.) ON 7/31/2023,PLAINTIFF GENERATED AN INMATE REQUEST FORM/CN9601,TO THE ORTHOPEDIC/DR.MALETZ,DUE TO THE DISC PROTRUSION @ C5-C6/LEVEL,CAUSING IMPAIRMENTS OF:RIGHT ARM NUMBNESS,FINGERS NUMBNESS,UNABLE TO MAKE FIST,HEADACHES,ETC, OF THE RIGHT SIDE OF PLAINTIFFS ENTIRE ARM/WRIST/FINGERS.

37.) ON 7/31/2023,PLAINTIFF ARTICULATED ON REQUEST THE FOLLOWING;

I OBTAINED AN,(MRI),IN AUGUST/2022.I AM IN PAIN ON MY NECK AREA/C5-C6, DISC PROTRUSION WHICH IS CAUSING MY RIGHT ARM TO GO NUMB.MY ARM FALLS ASLEEP NOW PERMANENTLY,AND,I AM INCURRING HEADACHES/NUMBNESS,ETC. MY L5-S1,LOWER BACK AREA IS IN PAIN INCLUDING CARPUL TUNNEL ON MY RIGHT WRIST.IT IS NOW A YEAR WITH NO FORESEEABLE INTERVENTION FROM YOU AS A CHESHIRE ORTHOPEDIC. DR.MALETZ,I REQUIRE ADEQUATE MEDICAL CARE FOR MY PAINFULL CONDITIONS. PLEASE SEE ME A.S.A.P. GAWLIK/#138888/NB1-107.

38.) ON AUGUST 10th,2023,DR.MALETZ,TREATING ORTHOPEDIC RESPONDED TO THIS INMATE REQUEST ON THE STATUS OF TREATMENT AS FOLLOWS;

MALETZ,
[NOTE:ATTACHED TO GRIEVANCE DATED:14 AUGUST/2023],

ADDRESSED AS SOON AS I SAW,WORSENING SYMPTOMS.

——————————>OSS FOR ORTHO SPINE SURGERY,
UCONN PLACED 10 AUGUST 2023.
MALETZ/17 AUGUST,2023.

39.) THE PLAINTIFFS,(MRI),CERVICAL SPINE REPORT AS FOLLOWS;

C5-C6:BROAD-BASED POSTERIOR DISC PROTRUSION WITH VENTRAL EFFACEMENT OF THE CSF,AND,MILD SPINAL CANAL STENOSIS. BILATERAL,RIGHT GREATER THAN LEFT UNCOVERTEBRAL JOINT HYPERTROPHY RESULTING IN SEVERE RIGHT,AND,MILD TO MODERATE LEFT NEURAL FORAMINAL NARROWING.

40.)ON 8/14/2023,THE PLAINTIFF FILED AN ADMINISTRATIVE REMEDY AGAINST DR.MALETZ,WHICH IS AWARE OF MY IMPAIRMENT ON THE CERVICAL SPINE AREA PROTRUSION,AND, HAS BEEN DELAYED IN TREATING THIS PLAINTIFF,WHICH PLAINTIFF STATES AS FOLLOWS;

ON OR ABOUT AUGUST/2022,I OBTAINED AN MRI FOR MY NECK AREA AT:C5-C6,DUE TO SEVERE NECK PROTRUSION OF THE DISC ON MY RIGHT SIDE OF MY BODY WHICH IS CAUSING NUMBNESS TO MY RIGHT ARM,FINGERTIPS,AND,HAND,TO BE IN EXTREME PAIN. I HAVE LOWER BACK PAIN WITH SURGERY IN 1998,OF A LAMINECTOMY IN THE REMOVEL OF A PORTION OF MY DISC AREA. (CONT...)

I HAVE CARPUL TUNNEL IN MY RIGHT HAND & IS CAUSING MY BONES IN MY KNUCKLES TO HURT AND BEND. I HAVE BEEN WAITING FOR AN ORTHOPEDIC IN CHESHIRE.C.I., FOR A YEAR NOW SINCE I OBTAINED AN MRI FROM UCONN IN AUGUST/2022. THE CONTINUAL DELAY OF ORTHOPEDIC/DR.MALETZ,AND,NO INTERVENTION TO PROPERLY TREAT------THIS PATIENT IS NOW DELIBERATE INDIFFERENCE.THE LACK OF MEDICAL STAFF IN THE FORM OF THE ONLY ORTHOPEDIC WITHIN THE DEPT.OF CORRECTIONS IS UNACCEPTABLE AND DUE TO COST OF HIRING ADDITIONAL STAFF DENIAL, FALLS UNDER 8th/AMENDMENT,OF THE U.S.CONSTITUTION. DR.MALETZ IS DENYING THIS PATIENT TREATMENT THAT HAS BEEN REQUESTED BY MEDICAL DEPT.REPEATEDLY IS CAUSING THIS PATIENT TO REMAIN IN EXTREME PAIN WITHOUT ANY INTERVENTION BY STAFF OF CORRECTIONS. (LAVENDER V.LAMPERT,242 f.supp.2d.821,843,-(D.OR.2002):HOLDS;THE FAILURE OF MEDICAL STAFF TO RESPOND TO ONGOING COMPLAINTS OF CHRONIC AND DEBILITATING PAIN COULD CONSTITUTE DELIBERATE INDIFFERENCE EVEN THOUGH THE PRISONER REGULARLY RECEIVED MEDICAL SERVICES. I REQUIRE TO BE SEEN BY DR.MALETZ/ORTHOPEDIC,OR,SCHEDULE THIS PATIENT FOR AN EMERGENCY TREATMENT FOR ORTHOPEDIC AT UCONN.I AM IN EXTREME PAIN WITHOUT ANY ADEQUATE MEDICAL TREATMENT FOR MY CONDITION.

## DR.MALETZ/ORTHOPEDIC,RESPONSE TO PLAINTIFFS GRIEVANCE ON THE,C5-C6 IMPAIRMENT,AND,MEDICAL DETERMINATION ON PLAINTIFFS CONDITION

41.) ON AUGUST 17th,2023,DR.MALETZ/ORTHOPEDIC,RESPONDED TO THIS PLAINTIFFS GRIEVANCE,AND,WAS UPHELD,AFTER DR.MALETZ REVIEW OF MY MEDICAL CHART/FILE,AND, COURSE OF MEDICAL TREATMENT WHICH WOULD BE FORWARDED TO UCONN FOR SURGERY/ORTHO SPINE.

42.) THE FOLLOWING RESPONSE WAS INDICATED AS FOLLOWS;

-PATIENT AND I ARE WELL KNOWN TO EACH OTHER.
--DR.WILLIAMS AND I HAVE BEEN UPDATING REGULARLY.
--INITIAL MANAGEMENT WAS FOR SHOULDER AND REFERED PAIN TO (R)UE.
--RECOMMENDED EXERCISE/SPACE OPENING CA-PIN DID NOT RESOLVE---->MRI.
-NARROWING IS BONY,AND,CHRONIC-NOT ANENABLE TO,"MEDICAL",TREATMENT/C5-C6.
-COMBINED ROUNDS ON:8/8/2022,&,8/11/2022,NOTED ON MRI.
- WHEN SYMPTOMS CONTINUED TO WORSEN AS CHRONIC CONDITIONS,MAY AND WERE-REPORTED TO ME----->august 10TH,2023.
-DID REQUEST PAIN EXPEDITE,OSS WAS PLACED TO UCONN FOR SURGERY/ORTHO-SPINE SPINE.

MALETZ/PRINCIPAL PHYSICIAN-ORTHO
AUGUST 17th,2023.

43.) THE PLAINTIFF ALLEGES THAT ADA-COORDINATOR/BLACKSTOCK,DOES NOT MATCH THE MEDICAL DETERMINATION OVER A YEAR PRIOR WHERE I REQUIRE SURGERY,EXERCISE,AND, THAT MY CONDITIONS OF IMPAIRMENT WORSENS. ADA-BLACKSTOCK ARTICULATES THAT WITH DR.MALETZ,AND,REVIEWED YOUR MEDICAL CHART ABOUT ANY RELEVANT ISSUES ABOUT YOUR STRUCTURAL INTEGRITY,OR,ANY PHYSICAL BARRIERS...THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN CAPACITY OF A TIERMEN.

44.) PLAINTIFFS SOCIAL SECURITY DISABILITY DOCUMENTS,&,DR.MALETZ,MEDICAL DETERMINATION CONTRADICT ADA-BLACKSTOCK DENIAL OF ADA-ACCOMMODATION/DISABLED! (EXHIBIT#(A5)-DR.MALETZ-MEDICAL DETERMINATION/C5-C6,CERVICAL IMPAIRMENT)

PLAINTIFF GENERATES INMATE REQUEST UNDER-ADA,TO DR.MALETZ/ORTHOPEDIC,TO CLARIFY ADA-BLACKSTOCK DENIAL OF ACCOMMODATIONS,WITH DR.MALETZ,INWHICH MY MEDICAL IMPAIRMENTS CONTRADICT DECISION(S)

45.) ON OCTOBER 22nd,2024,PLAINTIFF GENERATED AN INMATE REQUEST UNDER-ADA TO CLARIFY DR.MALETZ POSITION ON MY PHYSICAL IMPAIRMENTS,DUE TO MEDICAL NOTES AND GRIEVANCE CONTRADICTS ADA-BLACKSTOCKS DENIAL DECISION UNDER ADA-ACCOMMODATIONS WHICH DOCTORS NOTES ADDRESSES IMPAIRMENT,AND,ADA-BLACKSTOCK STATES THAT: (QUOTE);...THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN THE CAPACITY OF A TIERMEN.(SEE:EX#(A4)-ADA-DENIAL/EX#(A5)-DR.MALETZ-UPHELD IMPAIRMENT-GRIEVANCE-8/17/23.

46.) THE PLAINTIFF SUBMITTED THE FOLLOWING INMATE REQUEST BELOW;

RE:ADA-REASONABLE ACCOMMODATIONS.
DEAR DR.MALETZ,

IN THE NAME OF THE FATHER,SON,AND,HOLY SPIRIT,AMEN.PEACE TO YOU.+

DR.MALETZ,
ON 10/22/2024,I RECEIVED FROM ADA-COORDINATOR/BLACKSTOCK REASONABLE ACCOMMODATIONS I FILED ON:10/2/2024.
ADA-COORDINATOR/BLACKSTOCK DENIED MY REASONABLE ACCOMMODATIONS DATED: 10/17/2024,I REQUESTED REASONABLE ACCOMMODATIONS FOR 2nd/SHIFT TIERMAN JOB,WHICH REQUIRES,TWISTING,BENDING,REACHING,ETC,DUE TO MY DISABILITY ON THE L5-S1/LAMINECTOMY IN 1998,AND,MY C5-C6/DISC CERVICAL PROTRUSION,I REQUIRE REASONABLE ACCOMMODATIONS TO,UNDER,ADA-AMERICANS WITH DISABILITIES ACT.
ON 10/17/2024,ADA-COORDINATOR/BLACKSTOCK ARTICULATED THE FOLLOWING;

> INMATE,GAWLIK,JAN#138888,I SPOKE WITH DR.MALETZ,AND,REVIEWED YOUR MEDICAL CHART ABOUT ANY RELEVANT ISSUES ABOUT YOUR INTEGRITY,OR,ANY PHYSICAL BARRIERS YOU MAY HAVE TO PREVENT YOU FROM PERFORMING NORMAL DUTIES IN THE CAPACITY OF A UNIT TIERMAN. INMATE GAWLIK THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN THE CAPACITY OF A TIERMAN.

DR.MALETZ,PLEASE,RESPECTFULLY,PROFESSIONALLY RESPOND THAT YOU ARTICULATED THAT THEIR IS NO DISABILITY IMPAIRMENT AS WE ARE PROSPECTIVELY UPON A SURGICAL INTERVENTION,WHICH CONTRADICTS THAT ADA-COORDINATOR THAT THIS INMATE/PATIENT HAS NOTHING MEDICALLY INDICATING THAT I AM IN A DISABILITY STATUS PRESENTLY. IN ADDITION,I AM ALSO A DISABLED,(QUALIFIED-INDIVIDUAL),UNDER THE ADA,TITLE II,REHABILITATION ACT OF 1973,WHICH THESE DOCUMENTS ARE IN MY MEDICAL FILE,AND,MASTER FILE.
DR.MALETZ,DID YOU ALLOW ADA-COORDINATOR WITHOUT MY PERMISSION TO REVIEW MY CONFIDENTIAL MEDICAL DOCUMENTS WITHOUT MY KNOWLEDGE.
THIS VIOLATES FEDERAL HIPPA CONFIDENTIALITY LAWS,AND,I ONLY PLACED MY DISABILITY,(QUALIFIED INDIVIDUAL DOCUMENTS),WITHIN REQUESTED REASONABLE ACCOMMODATIONS UNDER THE ADA.
DR.MALETZ,PLEASE RESPECTFULLY RESPOND BELOW,IF,ADA-COORDINATOR/BLACKSTOCK CONSULTED WITH YOU ON MY CONDITION,AND,WHAT WAS YOUR RECOMMENDATION ON MY ADA-REASONABLE ACCOMMODATIONS FOR THE SECOND SHIFT TIERMAN?

RESPECTFULLY SUBMITTED,
GAWLIK#138888/NB1-107

47.) THIS PLAINTIFF ALLEGES THAT DR.MALETZ/ORTHOPEDIC,IS THE ONLY ONE DOCTORE FOR THE ENTIRE DEPT.OF CORRECTIONS IN THE FIELD OF ORTHOPEDICS,INWHICH HE IS ONLY AT CHESHIRE.C.I.,ONCE A MONTH,WHICH ADA-BLACKSTOCK DURING THE REASONABLE ACCOMMODATION DETERMINATION,DR.MALETZ WAS NOT AT CHESHIRE.C.I.,AND IS FABRICATED THAT ADA-BLACKSTOCK SPOKE TO DR.MALETZ?

48.) THIS PLAINTIFF ALLEGES THAT ADA-BLACKSTOCK DID NOT REVIEW THIS PLAINTIFFS MEDICAL FILE,AS IT IS A HIPPA VIOLATION WITHOUT MY PERMISSION TO VIEW ALL MY MEDICAL RECORDS,AND,DR.MALETZ CANNOT ALLOW ADA-BLACKSTOCK UNLIMITED ACCESS.

49.) THIS PLAINTIFF ALLEGES THAT ADA-BLACKSTOCK,IGNORED MY DISABILITY DOCUMENTS WITH PREJUDICE ONLY TO DENY THIS PLAINTIFFS REASONABLE ACCOMMODATION AS TIERMAN WITH A PUNITIVE MEASURE,AS ADA-BLACKSTOCK DENIES ALL ADA ACCOMMODATIONS. (EXHIBIT#(A6)-DATED:10/22/2024-INMATE REQUEST UNDER ADA/DR.MALETZ).

PLAINTIFF APPEALS ADA-REASONABLE ACCOMMODATION TO ADA-DIRECTOR-COLLEEN GALLAGHER TIMELY AFTER DENIAL BY ADA-BLACKSTOCK.

50.) ON 10/22/2024,THIS PLAINTIFF APPEALED THE DENIAL OF REASONABLE ACCOMMODATION BY ADA-COORDINATOR/BLACKSTOCK,TO THE DIRECTOR OF:ADA-COMPLIANCE/DIRECTOR/MS.COLLEEN GALLAGHER,WHICH IS THE HIGHEST ADA LEVEL WITHIN THE,DOC.

51.) ON 11/7/2024,RECEIVED BY ADA-DIRECTOR/GALLAGHER,THIS PLAINTIFFS ADA-APPEAL,OF ADA/BLACKSTOCK DENIAL,AS STAMPED ON APPEAL FORM.

52.) ON 10/22/2024,PLAINTIFF SUBMITS ARGUMENT/EVID.,WITHIN APPEAL AS FOLLOWS;

THIS INMATE,(GAWLIK,JAN.M.),IS A DISABLED,(QUALIFIED-INDIVIDUAL),UNDER & PURSUANT TO SOCIAL SECURITY ACT,TITLE II,REHABILITATION ACT OF 1973, ADA-AMERICANS WITH DISABILITIES ACT,SINCE YEAR/1996,BY SOCIAL SECURITY ADMINISTRATIVE LAW JUDGE/H.H.CLARK,RULED ON:MAY 18th,2001.(ENCLOSED), PURSUANT & WITHIN THE:DOC/OAP-PLAN,THIS INMATE IS REQUIRED DURING HIS INCARCERATION & CONFINEMENT,DIRECTED TO OBTAIN A CORRECTIONAL/EMPLOYMENT WITHIN THE DIRECTED,OAP-PLAN. IN THE YEAR/2023-24,THIS INMATE REQUESTED COUNSELORS TO PLACE GAWLIK ON TIERMAN JOB LIST,BUT,DUE TO THE LENGTH OF THE JOB LIST,WOULD HAVE TO WAIT,FIRST COME,FIRST SERVE,NEXT IN LINE. ON OCTOBER 1st,2024,THIS INMATE AFTER A LONG WAIT,WAS OFFERED A 2nd/SHIFT TIERMAN EMPLOYMENT POSITION,BUT,INDICATED TO THE COUNSELOR THAT DUE TO MY DISABILITY,INFIRM & STRUCTURAL BODY NATURAL LIFE DEFICIENTCIES AS A DISABLED,(QUALIFIED-INDIVIDUAL),INMATE GAWLIK UNDER ADA-REASONABLE ACCOMMODATIONS REQUIRES MODIFIED & ACCOMMODATIONS WITHIN THE TIERMAN EMPLOYMENT POSITION AS DUE TO DISABILITY EXTREME PAIN,THERE ARE AREAS THAT THIS INMATE CANNOT PERFORM BEING PERMANENTLY DISABLED PRIOR INCARCERATION,AND,INCARCERATED. (CONT...)------------------>

ON OCTOBER 2nd,2024,INMATE/GAWLIK ADA-REASONABLE ACCOMMODATIONS REQUEST CONSISTED OF THE ADA-ACCOMMODATIONS TO PERFORM 2nd/SHIFT TIERMAN EMPLOYMENT OF GAWLIK ONLY CAN PERFORM:SWEEPING THE TIER,BOTTOM TIER ONLY & WIPE TABLES AFTER INCARCERATED HAVE COMPLETED THEIR MEALS ON SECOND SHIFT,GAWLIK UNABLE TO CLEAN THE BLOCK SHOWERS & MOP THE FLOORS WHICH CONSISTS OF CONTINUAL TWISTING,BENDING,REACHING,WITH CONTINUAL FORCE WHICH CAUSES THIS DOCUMENTED DISABLED INDIVIDUAL EXTREME PAINFUL CONDITION,DUE TO NO PHYSICAL THERAPY IN DOC,GAWLIK MUST EXERCISE AT LEISURE INTERVALS TO RETAIN QUALITY OF LIFE WHICH IS REQUIRED FOR PSYCHOLOGICAL/MENTAL/PHYSICAL ATTRIBUTES TO CURTAIL DETERIORATION OF HUMAN BEING REQUIREMENT OF LIFES NEEDS.

THIS INMATE/PATIENT HAS THE FOLLOWING DOCUMENTED DISABILITIES THAT ARE PERMANENT AND CONSIST OF:(L5-S1-LAMINECTOMY OF LOWER BACK,DDD-DEGENERATIVE DISC DISEASE,C5-C5/CERVICAL DISC PROTRUSION,TITANIUM ROD LEFT LEG-FROM KNEE TO ANKLE WITH SCREWS),THAT ARE PERMANENT IN GAWLIKS NATURAL LIFE OF DISABILITY,(QUALIFIED-INDIVIDUAL).

ON 10/17/2024,THIS INMATE RECEIVED FROM ADA-COORDINATOR INTENTIONAL DISCRIMINATION,AND,WAS:DENIED,ADA-REASONABLE ACCOMMODATION WITH A DETRIMENTAL,AND,INCOHERANT MEDICAL REVIEW THAT IS OUTSIDE GAWLIKS DISABILITY DOCUMENTS. ADA-COORDINATOR DENIAL LANGUAGE AS FOLLOWS:INMATE GAWLIK,JAN#138888,I SPOKE WITH DR.MALETZ,AND,REVIEWED YOUR MEDICAL CHART ABOUT ANY RELEVANT ISSUES ABOUT STRUCTURAL INTEGRITY,OR,ANY PHYSICAL BARRIERS YOU HAVE TO PREVENT YOUR PERFORMING NORMAL DUTIES IN THE CAPACITY OF A UNIT TIERMAN. INMATE GAWLIK THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN THE CAPACITY OF A TIERMAN. HERE,THIS INMATE IS ALLEGING THAT ADA-COORDINATOR POSSIBLE CONVERSATION IS OUTSIDE THE SCOPE OF MY MEDICAL CONDITION. DR.MALETZ,HAS ME SCHEDULED FOR POSSIBLE SURGERY,AS ALSO MY DISABILITY DOCUMENTS ARE WITHIN MY MASTER FILE,AND,MEDICAL FILE, WHICH REFLECTS CONTRADICTION ON THE DEFICIENT RESPONSE BY ADA-COORDINATOR/BLACKSTOCK. MY SUBMITTED DOCUMENTS,SOCIAL SECURITY,DOCTORS NOTES,ALL REFLECT MY DISABILITY CONDITION,AND,INTENTIONALLY IGNORED FOR REASONABLE ACCOMMODATIONS BY ADA/BLACKSTOCK. IN ADDITION,THE ADA-BLACKSTOCK SUPERCEEDED ANY TYPE OF PERMISSION FROM ME TO REVIEW MY MEDICAL RECORDS WHICH IS A HIPPA VIOLATION,AS ADA/BLACKSTOCK ARTICULATED THAT HE REVIEWED MY MEDICAL CHART ABOUT RELEVANT ISSUES,INTURN,WITHOUT MY PERMISSION,AND,MY PERMISSION GIVEN TO DR.MALETZ TO BE ABLE TO ALLOW ADA/BLACKSTOCK,VIOLATES HIPPA PRIVACY LAWS FEDERAL JURISDICTION. ADA/BLACKSTOCK OBTAINED THE INCORRECT SIGNATURE OF AUTHORITY WHICH IS THE UNIT-ADMINISTRATOR,NOT,THE DEP.,WARDEN/CARLOS NUNEZ,WHICH IS IMPROPER UNDER DUE PROCESS,AND,LANGUAGE WHICH REQUIRES UNIT-ADMINISTRATOR/WARDEN-REIS,WHICH WAS NOT DONE HERE.

THE CIVIL RIGHTS ACT OF 1991,REQUIRES GOOD FAITH EFFORTS,IN CONSULTATION WITH THE PERSON WITH THE DISABILITY WHICH WAS NOT DONE HERE. THE CIVIL RIGHTS ACT OF 1964,(SECTION#1977)(42 USC§1981),PROVIDES FOR THE RECOVERY OF COMPENSATORY/PUNITIVE DAMAGES IN CASES OF INTENTIONAL VIOLATIONS OF TITLE II,ADA OF 1990,SECTION"501"OF THE REHABILITATION ACT OF 1973.THIS INMATE PURSUANT,(42 USC§1981),WAS DENIED EQUAL RIGHTS UNDER THE LAW,DISCRIMINATING AGAINST A DISABLED INDIVIDUAL WITHOUT ACCOMMODATION DOCUMENTED,CONTRADICTING A INTENTIONAL DISCRIMINATION BY ADA-BLACKSTOCK.

THEREFORE,THIS DISABLED INMATE GAWLIK APPEAL/COMPLAINT CONCERNING JOB DISCRIMINATION,OR,EXCLUSION,BASED ON DISABILITY,CITING THE,"PUBLIC-ENTITY" PROVISIONS,SINCE EMPLOYMENT IS A PROGRAM SUBJECT TO THE TITLE II PUBLIC ENTITY PROVISIONS. (NORTHROP V.CARUCCI,2007 WL685173,*4(D.CONN.,MARCH-5th,2007).IN CASE OF:(PENNSYLVANIA DEPT.OF CORRECTIONS V.YESKEY,524 U.S.-206(1998):HELD;SUPREME COURT,JUSTICE SCALIA,THAT TITLE II,OF THE ADA,PROHIBITING,"PUBLIC ENTITY",FROM DISCRIMINATING AGAINST,(QUALIFIED INDIVIDUAL",WITH THAT PERSONS DISABILITY,APPLIED TO INMATES IN STATE PRISONS.

ADA-BLACSTOCK,AS AN ADMINISTRATOR WITHIN A FEDERALLY FUNDED,"PUBLIC-ENTITY",IS DENYING THIS INMATE GAWLIK A PROGRAM UNDER THE CONNECTICUT DEPT.OF CORRECTIONS,THUS,VIOLATING MY ADA-RIGHTS. IN CASE OF:(U.S. V.-GEORGIA,546 U.S.151(2006):HOLDS;TITLE II OF ADA/ACT VALIDLY ABROGATES STATE SOVEREIGN IMMUNITY WHICH CREATES A PRIVATE CAUSE OF ACTION FOR DAMAGES,AND,SECTION,(42 USC§12202-STATE IMMUNITY),CREATES PRIVATE ACTION AGAINST INDIVIDUALS FOR DISABILITY VIOLATIONS. GAWLIK IS INFORMING ALL ADMINISTRATORS THAT I WILL FREEZE ASSET LIENS,FREEZE MONETARY ASSETS ETC,OF ALL INDIVIDUALS IN THEIR PRIVATE CAPACITY WITHIN AN ADA CIVIL ACTION IN U.S.DISTRICT COURT.

GAWLIK REQUESTS APPEAL RECONSIDERATION UNDER DUE PROCESS WITHOUT ADA-DISCRIMINATION WITHIN HIS PROSPECTIVE PROGRAM JOB EMPLOYMENT AS ADA-TIERMAN.

GAWLIK,JAN.M.#138888/10-22-2024.

53.) ON 11/26/2024,ADA-DIRECTOR/MS.COLLEEN GALLAGHER,RESPONDED WITH,(2-TWO), INITIAL RESPONSES,1st,WITHIN THE GRIEVANCE,2nd,WITH SUPPLEMENTAL RESPONSE,THE PLAINTIFF PRESENTS THE,1st,RESPONSE WITHIN THE GRIEVANCE BELOW AS FOLLOWS;

DISPOSITION:DENIED.

THE REQUESTED REVIEW OF YOUR LOCAL DENIAL FOR JOB PROGRAM ACCOMMODATION IS COMPLETED. A REVIEW OF THE ORIGINAL INFORMATION EXCHANGED BETWEEN LOCAL ADA,AND,MEDICAL SPECIALIST REVEALED NO NEED FOR ACCOMMODATION TO PERFORM TIERMAN ACTIVITIES.FURTHER,REVIEW OF YOUR REPORTED OAP REQUIREMENTS SHOW THIS IS A RECOMMENDATION AND NOT A REQUIREMENT OR STIPULATION. THERE IS NO EVIDENCE AT THIS TIME TO ACCOMMODATE TIERMAN DUTIES SHOULD YOU CHOSE TO TAKE THE OFFER.

COLLEEN GALLAGHER/DRC/11-26-2024.

54.) THE ADA-DIRECTOR SUBMITTED THE SUPPLEMENTAL DETERMINATION AS FOLLOWS;

NOVEMBER 26th,2024

JAN GAWLIK#138888

MR.GAWLIK,

THIS LETTER SERVES AS A SUPPLEMENTAL DOCUMENT TO THE ADMINISTRATIVE APPEAL SUBMITTED AT CHESHIRE CI. IN YOUR APPEAL,YOU MENTION SOCIAL SECURITY ADMINISTRATION,ADA,CIVIL RIGHTS,PROCEDURAL,AND,HIPPA,"VIOLATIONS". IT IS UNCLEAR IF YOU HAVE ADDRESSED THESE ALLEGATIONS AT YOUR FACILITY. SINCE IT WOULD BE A LEGAL DETERMINATION IF VIOLATIONS HAVE ACTUALLY OCCURRED I CANNOT STATE ONE WAY OR THE OTHER,BUT,I WILL ADDRESS WHAT I CAN IN THIS LETTER.

SOCIAL SECURITY:

THANK YOU FOR PROVIDING THE SUPPLEMENTAL INFORMATION. THE DOCUMENTS ARE RELATED TO EMPLOYMENT,WHICH IS NOTED THERE AS,"SUBSTANTIAL GAINFUL ACTIVITY". THE ACTIVITIES OF A TIERMAN ARE NOT CONSIDERED SUBSTANTIAL OR GAINFUL,ARE LISTED AS A LEVEL#1 CLASSIFICATION,AND,DOES NOT REQUIRE SPECIAL TRAINING/SKILLS. THIS POSITION IS SPREAD AMOUNG THREE INMATES FOR CLEANING TABLES,SHOWERS,AND,PASSING FOOD TRAYS. THE JOB IS ALSO SPREAD ACROSS--TIME,MEANING NON-CONSISTANT ENGAGEMENT IN THE ACTIVITY DURING A GIVEN SHIFT AFFORDING YOU THE OPPORTUNITY TO REST BETWEEN ACTIVITIES,THIS IS MORE THAN ADEQUATE CONSIDERATION. HOWEVER,IF THIS POSITION SUCH AS FOOD SERVICES WORKER,OR,OUTSIDE WORKER REQUIRING YOU TO BE ON YOUR FEET OR CONSTANTLY ENGAGED IN SUSTANTIAL EFFORTS FOR ENTIRE SHIFT,THE ANSWER MAY HAVE BEEN DIFFERENT.

(CONT...)-------->

HIPPA AND PROCEDURE:
THE UNIT ADA COORDINATOR UPON RECEIPT OF SUCH REQUEST SHALL MAKE ARRANGEMENTS WITH HEALTH SERVICES TO REVIEW, ASSESS, AND VERIFY THE REPORTED FUNCTIONAL IMPAIRMENT TO HELP DETERMINE THE NEED FOR REASONABLE ACCOMMODATIONS.

I WILL REMIND ADA COORDINATORS TO BE CONSCIENTIOUS OF LANGUAGE SO AS TO NOT TO BE MISUNDERSTOOD. THEY DO NOT REVIEW THE HEALTH CHART, BUT, CONSULT WITH VARIOUS HEALTH CARE PROVIDERS SUCH AS MEDICAL, ORTHOPEDICS, DENTAL, MENTAL HEALTH, ETC., FOR CORROBORATING INFORMATION; THIS IS THE LANGUAGE OF THE DIRECTIVE. YOUR USE OF THIS DIRECTIVE MEANS YOU HAVE READ AND UNDERSTOOD IT. ADA-COORDINATORS DO NOT HAVE ACCESS TO MEDICAL FILES, BUT, IN ITS KEEPING WITH THE DIRECTIVE THAT THE PROVIDERS MUST SHARE INFORMATION AS APPROPRIATE TO WEIGH AGAINST OTHER FACILITY FACTORS TO ASSIST FACILITY ADMINISTRATORS IN DECIDING IF SUCH AN ACCOMMODATION IS WARRANTED, SAFE & FEASIBLE & CONSIDER ALTERNATIVES AS APPROPRIATE. IN THIS CASE YOUR CONSULTING PHYSICIAN PLACED AN ORDER FOR SURGICAL REVIEW AT YOUR REQUEST FOR SURGICAL SOLUTION.
FACILITY ADMINISTRATORS MAY HAVE A DESIGNEE AS NEEDED AND A SIGNATURE BY SUCH A DESIGNEE WOULD NOT BE APPROPRIATE. IF YOU CHOOSE NOT TO ACCEPT THE TIERMAN SLOT, THIS CAN BE DONE WITHOUT PREJUDICE.

ADA/CIVIL RIGHTS DISCRIMINATION:
IT IS UNCLEAR IN YOUR DOCUMENT WHERE OR WHEN SUCH DISCRIMINATION OCCURRED AS YOU HAVE BEEN OFFERED A PROGRAM/JOB WHICH IS NOT REQUIRED. THE POSITION OFFERED TO YOU WAS ONE IN WHICH YOUR PROVIDERS FELT YOU WERE CAPABLE OF DOING THAT WOULD NOT REQUIRE AN ACCOMMODATION. AS STATED EARLIER IF THIS POSITION SUCH AS FOOD SERVICES WORKER OR OUTSIDE WORKER REQUIRING YOU TO BE ON YOUR FEET OR CONSTANTLY ENGAGED IN SUBSTANTIAL EFFORTS FOR AN ENTIRE SHIFT THE ANSWER MAY HAVE BEEN DIFFERENT.

BEST OF LUCK ON YOUR DECISION REGARDING, THE OFFERED TIERMAN DUTIES. AS YOU HAVE NOT YET ACCEPTED OR ATTEMPTED TO TRY THE POSITION, I ENCOURAGE YOU TO DO SO AND WORK WITH YOUR UNIT MANAGER TO MAKE SURE IT IS A GOOD FIT.

REGARDS,
COLLEEN GALLAGHER

COLLEEN GALLAGHER, MA, CADAC, CCHP,
DISABILITY RIGHTS COORDINATOR, COMPLIANCE

55.) PLAINTIFFS ALLEGATIONS OF DISABILITY DISCRIMINATION BELOW; (NOTE: PLAINTIFF-(CHRONOLOGICAL ORDER OF ADMINISTRATORS) NEVER MET WITH DR. MALETZ).

1.) THE PLAINTIFF ALLEGES THAT ON 10/2/2024, HE SUBMITTED WITH REQUEST FOR REASONABLE ACCOMMODATIONS, DISABILITY DETERMINATION AS DISABLED, "QUALIFIED INDIVIDUAL", OPERATIVE/DOCTOR NOTES, BACK/CERVICAL IMPAIRMENT-DOCUMENTS OF TOTAL DISABILITY WHICH WAS IGNORED FOR ACCOMMODATIONS.

2.) ADA--BLACKSTOCK ALLEGEDLY SPOKE TO DR. MALETZ, AS THE DOCTOR IS ONLY WITHIN CHESHIRE.C.I., ONCE A MONTH IF HE IS HERE, WHERE THERE ARE MONTHS WHERE HE IS NOT AT CCI, AND, AS ADA-BLACKSTOCK ARTICULATED IN THE DENIAL, THE DOCTOR/ADA, BOTH REVIEWED MY CHART WHICH IS A HIPPA VIOLATION, IN WHICH ADA-COORDINATOR STATED THAT MY STRUCTURAL INTEGRITY & PHYSICAL BARRIERS ARE INTACT...THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN TIERMAN CAPACITY. THE ADA-DECISION BY THE SOCIAL SECURITY ADMINISTRATION DOES NOT APPLY IN DOC, NOR DOES THE ADA-AMERICANS WITH DISABILITIES ACT, NO ACCOMMODATIONS.

3.) THE REASONABLE ACCOMMODATION DETERMINATION SIGNED OFF BY:D/W-C.NUNEZ, WAS OUTSIDE THE SCOPE OF THE OFFICIAL UNIT ADMINISTRATOR PROPER SIGNATURE,AND,THE RESPONSE:(INMATE GAWLIK YOUR REQUEST FOR REASONABLE-ACCOMMODATION WAS DENIED),AS PLAINTIFF ALLEGES,HERE,THAT ADA-BLACKSTOCK,PREFORMATTED THE RESPONSE FOR ALLEGED UNIT ADMINISTRATOR/WARDEN,ALL THAT WAS REQUIRED WAS A SIGNATURE SIGN-OFF.(DISCRIMINATION).

4.) THE PLAINTIFFS APPEAL DATED:10/22/2024,ARTICULATED EVERYTHING OF ADA, LEGAL CITATIONS,STATUTES,ETC,THAT MY POSITION IS ONE OF A SOCIAL SECURITY,DISABLED,(QUALIFIED-INDIVIDUAL),OF REMOVAL OF A PORTION OF HIS DISC IN HIS LOWER LUMBAR SPINE,L5-S1/LAMINECTOMY,AND,PRESENTLY A DISC PROTRUSION IN C5-C6/CERVICAL NECK AREA,PRESENTED A SERIOUS LIFELONG IMPAIRMENT WITH CHRONIC PAIN AT ALL AREAS UPPER/LOWER PART OF BODY. THIS DISABLED,"QUALIFIED-INDIVIDUAL",WAS DENIED A PROGRAM/JOB DUE TO HIS DISABILITY,AND,RETALIATION BY ALL ADA-ADMINISTRATORS DUE TO CIVIL ACTIONS AGAINST DOC STAFF WHICH RESONATES THROUGHOUT HEADQUARTERS.

5.) ADA-DIRECTOR/COLLEEN GALLAGHER,ON HER:11/26/2024,RESPONSE WITHIN THE ADA OFFICIAL FORM THAT THIS PLAINTIFF,(OAP),REQUIREMENT DOES NOT AT ALL REQUIRE ACCOMMODATION,ONLY CERTAIN JOBS WITHIN DOC REQUIRE ADA-ACCOMMODATION,RESULTING THAT DISCRIMINATION IS VIABLE TOWARDS AN ADA-DISABLED INDIVIDUALS WHICH CONSTITUTES THAT ADA WITHIN CONNECTICUT DEPT,OF CORRECTIONS IS A SELECTIVE ADA ALLOWABLE ISSUE,AND,THAT ADA DOES NOT APPLY TO ALL JOB PROGRAMS,EVEN WITH A DISABILITY OF A,"QUALIFIED INDIVIDUAL",AS THIS PLAINTIFF,UNDER DOC IS NOT DISABLED,PLACING THEIR OWN ADA-CRITERIA,SELECTIONS,OF PLACEMENT OF ADA WORKERS.

6.) ON 11/26/2024,ADA-DIRECTOR/GALLAGHER,SUPPLEMENTAL LETTER DETERMINATION,AND,DENIAL REFLECTS IN HER OWN LANGUAGE THE SELECTIVE ADA-INDIVIDUALS THAT ARE CHOSEN BY ADA ADMINISTRATION,ELIMINATING CERTAIN & ADA-INDIVIDUALS IN JOB PROGRAMS. THE ADA-JOB PROGRAM IS A GAINFUL-ACTIVITY,AS IT ALLOWS THE ADA-INDIVIDUAL TO EARN THE:$1.00/ONE DOLLAR, A DAY PAY WHEN THE ADA-INDIVIDUAL HAS NOTHING FOR INCOME.THE ADA INDIVIDUAL EXERTS HIMSELF IN AREAS WHERE CHRONIC PAIN IS LIFELONG PROMINENT,AND,TO EVEN TRY THE POSITION WILL CAUSE MORE DAMAGE THAN BEING ALLOWED REASONABLE ACCOMMODATIONS,TO SUBDUE ANY IMPAIRMENT PAIN. THE ADA-DIRECTOR/GALLAGHER ARTICULATED THAT THE DISABLED INDIVIDUAL CAN REST BETWEEN ACTIVITIES,SHOWS THE DISREGARD, OF THE DISABLED INDIVIDUAL PERMANENT CHRONIC IMPAIRMENT,ONLY,TO ALLOW PAIN TO PROSPER.

7.) THE ADA-COORDINATOR/BLACKSTOCK,AND,DR.MALETZ,THIS PLAINTIFF ALLEGES NEVER TOOK PLACE,WHERE ADA-BLACKSTOCK ARTICULATED THAT THERE IS NOTHING MEDICALLY INDICATING THAT I HAVE ANY IMPAIRMENT,YET,(EXHIBIT#(A5), BY DR.MALETZ,STATE THAT I HAVE A DISC PROTRUSION ON MY NECK AREA & HIS RESPONSE IN GRIEVANCE REFLECTS THE DAMAGE I HAVE IN NECK AREA OF CERVICAL BASE,THIS CONTRADICTS ADA-COORDINATOR/BLACKSTOCK RESPONSE OF THERE IS NOTHING MEDICALLY WRONG IN MY MEDICAL CHARTS, (DISCRIMINATION BY BLACKSTOCK & GALLAGHER).(PLAINTIFF (NEVER) MET-DR.MALETZ)

8.) THE ADA-COORDINATOR/BLACKSTOCK & GALLAGHER,BOTH,DISCRIMINATED AGAINST THIS PLAINTIFF MAINLY SEPERATING JOB PROGRAMS THAT THEY BELIEVE ARE NOT SUBJECT TO ADA-REASONABLE ACCOMMODATIONS AS BELOW;
TITLE#28,PART#35,SUB#(B),§35.130(2):STATES;A PUBLIC ENTITY MAY NOT DENY A QUALIFIED INDIVIDUAL WITH A DISABILITY THE OPPORTUNITY TO PARTICIPATE IN SERVICES,PROGRAMS,OR,ACTIVITIES THAT ARE NOT SEPERATE OR DIFFERENT,DESPITE THE EXISTANCE OF PERMISSIBLY SEPERATE OR DIFFERENT PROGRAMS OR ACTIVITIES, (SEE:TITLE#28§35.108).

(EXHIBIT#(A7)-APPEAL/ASDA-DIRECTOR/GALLAGHER/DISCRIMINATION).

ADA-COORDINATOR/BLACKSTOCK,ON:12/19/2024,between;7:40am-TO-8:00am,PRIOR TO OBTAIN ADA-SHOWER,STOPPEDPLAINTIFF IN UNIT,AND, INTIMIDATED/HARASSED WITH PUNITIVE LANGUAGE DUE TO MY DISABILITY (RETALIATION)

56.) THE PLAINTIFF ALLEGES THAT ON:12/19/2024,AT:7:40am-TO-8:00am,THE UNIT-MANAGER/BLACKSTOCK,WHICH IS ALSO THE:ADA-COORDINATOR/BLACKSTOCK,FOR THE ENTIRE CHESHIRE.C.I.,FACILITY,INTIMIDATED AND HARASSED THIS DISABLED PERSON DUE TO HIS DISABILITY.

57.) THE PLAINTIFF HAS APPROVED DISABILITY ACCOMMODATIONS,THAT WERE APPROVED PRIOR BY PREVIOUS ADA-COORDINATORS WITHOUT PREJUDICE,AS FOLLOWS;

1.) APPROVED ADA-HANDICAPPED SHOWER,RELEASED 15-MINUTES PRIOR GENERAL-POPULATION RECREATION RELEASE,THAT PLAINTIFF MAY UTILIZE HANDICAPPED SHOWER DUE TO HIS DISABILITY/IMPAIRMENT.

2.) PLAINTIFF HAS APPROVED FACILITY TRANSPORT ADA-ACCOMMODATION,INWHICH AS A DISABLED INDIVIDUAL,MY MEDICAL,COURT,ETC,TRANSPORT TO LOCATIONS CONSIST OF,(2-TWO),OFFICERS,AND,PRIVATE VEHICLE DUE TO BACK DISABILITY,AND,UNABLE TO BE IN PUBLIC VAN WITH MULTIPLE INMATES,WHERE I AM RESTRAINED FOR HOURS WHICH CAUSES EXTREME PAIN,,THE PRIVATE TRANSPO TO LOCATIONS IS LESS THAN ONE HOUR,WITH SPECIAL HANDCUFFS,UNDER ADA.

58.) ON 12/19/2024,UPON RELEASE TO THE HANDICAPPED SHOWER,15-MINUTES PRIOR RELEASE GENERAL POPULATION RECREATION,ADA-COORDINATOR/BLACKSTOCK,STOPPED THIS PLAINTIFF PRIOR TO HANDICAPPED SHOWER,AND,ARTICULATED THAT IF IT WERE UP TO ME, I WOULD NOT HAVE APPROVED YOUR HANDICAP SHOWER MEMO RELEASE PRIOR RECREATION, NOR,THE ADA-TRANSPORT TO MEDICAL AREAS,COURTS,ETC,DUE TO YOU ARE NOT HADICAPPED,OR,DISABLED.

59.) THE PLAINTIFF VERY UPSET STATED:THEN THE BACK OPERATION,AND,THE SOCIAL SECURITY ADMINISTRATION DO NOT KNOW WHAT THEY ARE DOING,AND,DISABILITY IS JUST A WORD WITH NO MEANING,NOR,A DISABLED INDIVIDUAL IS WITHOUT CREDIBILITY.

60.) ADA-BLACKSTOCK INTEROGATED THIS PLAINTIFF,AND,DEMANDED TO KNOW WHO WERE THE PRIOR ADA-COORDINATORS THAT ERRONEOUSLY APPROVED MY SHOWER/TRANSPORT ADA-ACCOMMODATIONS,PLAINTIFF ARTICULATED THAT COUNSELOR SUPERVISOR/MOLINA FOR THE SHOWER,AND,CAPTAIN/MANICK-ADA-COORDINATOR FOR TRANSPORT,WHICH I ARTICULATED TO THE ADA-COORDINATOR/BLACKSTOCK,THATYOU CANNOT INVALIDATE THESE ADA-APPROVED ACCOMMODATIONS,ADA-BLACKSTOCK STATED:I CAN DO WHAT I WANT UNDER ADA/CAPTAIN.

61.) THE PLAINTIFF ASKED ADA-COORDINATOR WHY THE REASONS FOR THE PRIOR ADA ACCOMMODATIONS QUESTIONS WHEN THEY HAVE NOTHING TO DO WITH YOU, AS THIS IS OUT-SIDE THE SCOPE OF YOUR AUTHORITY, AND, YOU CANNOT CHANGE ALREADY APPROVED ACCO-MMODATION, THIS WOULD BE DISCRIMINATIVE ON YOUR PART, AND, PUNITIVE.

62.) ADA-COORDINATOR/BLACKSTOCK, BEGAN WITH MORE RHETORIC LANGUAGE , SO THE PLAIN-TIFF BEING UPSET DUE TO THE DISCRIMINATIVE LANGUAGE WALKED AWAY FROM ADA-BLA-CKSTOCK, AND, WENT INTO THE SHOWER, WHILE WALKING TO THE SHOWER, PLAINTIFF ASKED ADA/BLACKSTOCK TO STOP HARASSING ME FOR NO PENOLOGICAL REASON. THEN BLACKSTOCK LOOKED TOWARDS THE 2-TWO OFFICERS ASSIGNED TO THE BLOCK AND LAUGHING WITH THEM AS TO SHOW THE OFFICERS THAT HE LIKES TO INTIMIDATE INMATES, AND, PUBLICLY THAT I AM NOT DISABLED, VIOLATING PRIVACY HIPPA FEDERAL LAWS, PLAINTIFF WAS UPSET ALL DAY DUE TO BLACKSTOCK DISCRIMINATORY ACTIONS IN FRONT OF OFFICERS TO PREJUDICE.

63.) THE PLAINTIFF REQUESTED FOI/FREEDOM OF INFORMATION OFFICE TO PRESERVE THE VIDEO BETWEEN THIS DISABLED, "QUALIFIED-INDIVIDUAL", AND, ADA-COORDINATOR/BLACK-STOCK, THAT REFLECTS THE CONVERSATION BETWEEN BOTH OF US WHERE PREJUDICE OCCURED STOPING THIS PLAINTIFF PRIOR ADA-SHOWER AS, (VIDEO#CCI-VP-25-032, SHOWS THE BIAS.

*NOTE: DUE TO CONNECTICUT WIRE TAPPING LAWS WITHOUT CONSENT, ALL DOC VIDEOS-ARE UNABLE TO RECORD SOUND, VOICES, ETC, WITHOUT INDIVIDUALS PERMISSION*

THE DISCRIMINATIVE VIDEO ITSELF REFLECTS THESE ALLEGATIONS BY THE PLAINTIFF, AND THE COURT MUST ACCEPT THE ALLEGATIONS AS, (CREDIBLE), & VIDEO REFLECTS THE ALLEGATIONS AS ARTICULATED, AND, THE RETALIATION BY THE ADA-COORDINATOR AS DISCRIMINATIVE WITHOUT ANY REASONS TO CONTRADICT THIS PLAINTIFFS DISABILITY.

PLAINTIFF SUBMITS EXHIBITS OF: VIDEO, ADA-SHOWER, ADA-TRANSPORT.
(EXHIBIT#(A8)-VIDEO#CCI-VP-25-032/ADA-SHOWER/ADA-TRANSPORT).

## CONCLUSION

THIS DISABLED, "QUALIFIED-INDIVIDUAL", IS BEING DISCRIMINATED BY DEFE-NDENTS DUE TO HIS DISABILITY, DENYING DISABLED REASONABLE ACCOMMODAT-IONS WITHIN A, FEDERALLY FUNDED PUBLIC ENTITY, WITHIN A JOB PROGRAM & DUE TO PLAINTIFFS LIFELONG PERMANENT IMPAIRMENTS, VIOLATIONS OF THE ADA, TITLE II, REHABILITATION ACT OF 1973, §35.108, §35.130, 42 U.S.C.§ 12132, 29 U.S.C.§794(A), ETC, PLAINTIFF ESTABLISHED PRIMA-FACIA UNDER THESE ACTS, AND, SERVICES, PROGRAMS, ACTIVITIES ARE BEING DENIED/PLAINTIFF.

RESPECTFULLY SUBMITTED,

GAWLIK, JAN.M #138888
CCI, 900 HIGHLAND AVENUE,
CHESHIRE, CT.06410

DEMANDS AND RELIEF REQUESTED

WHEREFORE:PLAINTIFF REQUESTS COURT GRANT THE FOLLOWING DEMANDS & RELIEF;

A.) ISSUE A DECLARATORY JUDGMENT STATING THAT;

1.) DEFENDENTS:BLACKSTOCK,GALLAGHER,MALETZ,NUNEZ,VIOLATE THE FOLLOWING;DISCRIMINATION OF A DISABLED INDIVIDUAL UNDER ADA-AMERICANS WITH DISABILITIES ACT, ADA-TITLE II,SECTION,"504",OF THE REHABILITATION ACT OF 1973,SECTION#1977/42-U.S.C.§1981,TITLE VII-OF THE CIVIL RIGHTS ACT OF 1964,CIVIL RIGHTS ACT OF 1991-TITLE I,SECTION#706,OR,717-OF THE CIVIL RIGHTS ACT OF 1964,42 U.S.C.§12117(a), SECTION#505(a)(1)-REHABILITATION ACT OF 1973,ADA/SECTION#102(b)(5),29 U.S.C.§-794a,TITLE#28-U.S.C.§35.108-DEFINITION OF DISABILITY,TITLE#28-U.S.C.§35.130-GENERAL PROHIBITIONS AGAINST DISCRIMINATION/ALL SECTIONS,TITLE II-ADA/SECTIONS#42-U.S.C.§§§§12131-TO-12134,42 U.S.C.§12112-DISCRIMINATION,CIVIL RIGHTS ACT OF 1964/SEC#2000e-7[SECTION-708],42 U.S.C.§12202-STATE IMMUNITY,28 C.F.R.-§35.130(b)(1)-DISCRIMINATION,42 U.S.C.§1985/CONSPIRACY TO INTERFERE WITH CIVIL-RIGHTS,42 U.S.C.§1986/ACTION FOR NEGLECT TO PREVENT,1st/AMENDMENT RETALIATION, DELIBERATE INDIFFERENCE,8th/AMENDMENT,14th/AMENDMENT DUE PROCESS CLAUSE,14th/-AMENDMENT-EQUAL PROTECTION CLAUSE,18 U.S.C.§245-FEDERALLY PROTECTED ACTIVITIES, DUE PROCESS CLAUSE,PROCEDURAL DUE PROCESS,ETC,AND/OR,ANY OTHER VIOLATIONS THAT IS DEEMED BY THE COURT. STATE VIOLATIONS OF:(CGS§53a-181k/BIGOTRY AND BIAS). THE PLAINTIFF ALLEGES THE ABOVE FEDERAL/STATE VIOLATIONS RIGHTS UNDER:42 U.S.-C.§1983/ADA,COMPLAINT.

2.) THE CONSPIRACY & RETALIATION BY:DEFENDENTS:BLACKSTOCK,GALLAGHER,MALETZ, NUNEZ IN COMMUNICATING & IN AGREEMENT TO DENY REASONABLE ACCOMMODATIONS WITH A ADA-DISCRIMINATION,INWHICH THE PLAINTIFF IS LEFT IN EMOTIONAL/MENTAL/PAIN,WITH DELIBERATE INDIFFERENCE FAILING TO ASSIST IN THE DISABILITY ACCOMMODATION THAT EXCLUDES PLAINTIFF FROM:SERVICES,PROGRAMS,ACTIVITIES. (UNITED STATES V.SCOTT-CASE NO'S.18-2835,18-282(2nd.cir.2020):HOLDS;SECOND CIRCUIT RULED THAT A CONSPIRACY DOES NOT REQUIRE A SET AMOUNT OF TIME,OR,ACTUAL DISCUSSION AMOUNG THE CONSPIRATORS,SO AS LONG AS SURROUNDING FACTS,AND,CIRCUMSTANCES SUPPORT THE EXISTANCE OF AN AGREEMENT.

B.) ISSUE AN INJUNCTION ORDERING DEFENDANTS,AND/OR,THEIR AGENTS TO:

1.) ORDERING-COMMISSIONERS OFFICE,DEFENDENTS,AND,ITS AGENTS TO CEASE DENIAL OF A SERVICE.PROGRAM,ACTIVITY,AND,CEASE,DISCRIMINATION ON THE BASIS OF DISABILITY OF JOB PROGRAM DUE TO RETALIATION OF THIS DISABLED INDIVIDUAL,OF PAST CIVIL ACTIONS,ON ACCOUNT OF DISABILITY.

2.) ORDERING-COMMISSIONERS OFFICE,DEFENDANTS,AND,ITS AGENTS TO CEASE DENIAL ON THE BASIS OF DISABILITY,BE EXCLUDED FROM PARTICIPATION IN OR BE DENIED THE BENEFITS OF THE SERVICES,PROGRAMS,OR,ACTIVITIES OF A PUBLIC ENTITY,OR,BE SUBJECTED TO DISCRIMINATION BY ANY PUBLIC ENTITY.

3.) ORDERING-COMMISSIONERS OFFICE,DEFENDANTS,AND,ITS AGENTS TO CEASE DENIAL AGAINST THIS PLAINTIFF,AND,QUALIFIED INDIVIDUAL WITH A DISABILITY THE OPPORTUNITY TO PARTICIPATE IN SERVICES,PROGRAMS,OR,ACTIVITIES THAT ARE NOT SEPERATE,OR,DIFFERENT,DESPITE THE EXISTENCE OF PERMISSIBLY SEPERATE,OR,DIFFERENT PROGRAMS,OR, ACTIVITIES.

4.) ORDERING-COMMISSIONERS OFFICE,DEFENDANTS,AND,ITS AGENTS TO CEASE DENIAL OF THIS PLAINTIFF,THAT HAS THE PURPOSE,OR,EFFECT OF DEFEATING,OR,SUBSTANTIALLY IMPAIRING THE ACCOMPLISHMENT OF THE OBJECTIVES OF THE SERVICES,PROGRAMS,OR,ACTIVITY WITH RESPECT TO INDIVIDUALS WITH DISABILITIES.

5.) ORDERING-COMMISSIONERS OFFICE,DEFENDANTS,AND,ITS AGENTS TO CEASE DENIAL OF OF A DISABLED INDIVIDUAL WHICH SHALL IMPOSE,OR,APPLY ELIGIBILITY CRITERIA THAT SCREEN OUT,OR,TEND TO SCREEN OUT AN INDIVIDUAL WITH A DISABILITY,OR,ANY CLASS OF INDIVIDUALS WITH A DISABILITY FROM FULLY,AND,EQUALLY ENJOYING AND SERVICE, PROGRAM,OR,ACTIVITY,TOWARDS A DISABLED INDIVIDUAL.

6.) ORDERING-COMMISSIONERS OFFICE,DEFENDANTS,AND,ITS AGENTS TO CEASE DENYING THIS PLAINTIFF AS A QUALIFIED INDIVIDUAL WITH A DISABILITY WITH THE AID,BENEFIT,OR,SERVICE THAT IS NOT EFFECTIVE IN AFFORDING EQUAL OPPORTUNITY TO OBTAIN THE SAME RESULT,TO GAIN THE SAME BENEFIT,OR,TO REACH THE SAME LEVEL OF ACHIEVEMENT AS PROVIDED TO OTHERS.

7.) ORDERING-COMMISSIONERS OFFICE,DEFENDANTS,AND,ITS AGENTS TO CEASE DENYING THIS DISABLED,"QUALIFIED-INDIVIDUAL",THE REASONABLE ACCOMMODATIONS WITHIN A CONNECTICUT CORRECTIONAL JOB PROGRAM,WITHOUT DISCRIMINATION.

C.) AWARD COMPENSATORY DAMAGES IN THE FOLLOWING AMOUNTS:ALLDEFENDANTS OF;
1.) ($3,000,000.00/THREE MILLION DOLLARS),JOINTLY AGAINST DEFENDANTS: BLACKSTOCK,GALLAGHER,MALETZ,NUNEZ,VIOLATING;DISCRIMINATION OF A DISABLED INDIVIDUAL-UNDER ADA-AMERICANS WITH DISABILITIES ACT,ADA-TITLE II,SECTION 504 OF THE REHABILITATION ACT OF 1973,("SECTION-504"),SECTION #1977/42 U.S.C.§1981,TITLE-VII-OF THE CIVIL RIGHTS ACT OF 1964,42 U.S.C.§12117(a),&,SECTION#505(a)(1)-REHABILITATION ACT OF 1973,ADA/SECTION#102(B)(5),29 U.S.C.§794a,TITLE#28 U.S.C.§35.108-DEFINITION OF DISABILITY,TITLE#28 U.S.C.§35.130-GENERAL PROHIBITIONS AGAINST DISCRIMINATION/ALL-SECTIONS,TITLE#II-ADA/SECTIONS#42 U.S.C.§12131-TO-12134,42 U.S.C.§12112-DISCRIMINATION,CIVIL RIGHTS ACT OF 1964/SEC#2000e-7[SECTION/708],42 U.S.C.§12202-STATE IMMUNITY,28 C.F.R.§35.130(b)(1)-DISCRIMINATION, 42 U.S.C.§1985/CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS,42 U.S.C.§1986/ACTION FOR NEGLECT TO PREVENT,1st/AMENDMENT RETALIATION,DELIBERATE INDIFFERENCE,8th/-AMENDMENT,14th/AMENDMENT DUE PROCESS CLAUSE,14th/AMENDMENT-EQUAL PROTECTION CLAUSE,18 U.S.C.§245/FEDERALLY PROTECTED ACTIVITIES,DUE PROCESS CLAUSE,PROCEDURAL DUE PROCESS CLAUSE,ETC,AND,ANY OTHER ADA-VIOLATIONS DEEMED BY THIS COURT.

D.) AWARD DAMAGES IN,(PRIVATE-CAPACITY/42 U.S.C.§12202-STATE IMMUNITY),AMOUNT; ($500,000.00/FIVE HUNDRED THOUSAND DOLLARS)(EACH DEFENDENT),PURSUANT;A STATE SHALL NOT BE IMMUNE UNDER THE ELEVENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES FROM AN ACTION IN FEDERAL OR STATE COURT OF COMPETENT JURISDICTION FOR VIOLATION OF THIS CHAPTER. IN ANY ACTION AGAINST A STATE FOR A VIOLATION OF THE REQUIREMENTS OF THIS CHAPTER,REMEDIES,(INCLUDING REMEDIES BOTH LAW AND-IN EQUITY),ARE AVAILABLE FOR SUCH A VIOLATION TO THE SAME EXTENT AS SUCH REMEDIES ARE AVAILABLE FOR SUCH A VIOLATION IN AN ACTION AGAINST ANY PUBLIC OR PRIVATE ENTITY OTHER THAN A STATE. (PLAINTIFFS ADA-COMPLAINT IS WITHIN PRIVATE-CAPACITY,&,INDIVIDUAL/OFFICIAL-CAPACITIES). VIOLATIONS OF:ADA-AMERICANS WITH-DISABILITIES ACT,TITLE II,SECTION,(504),OF THE REHABILITATION ACT OF 1973,28-U.S.C.§35.108-DEFINITION OF DISABILITY,28 C.F.R.§35.130(b)(1)-DISCRIMINATION, 42 U.S.C.§12131-TO-12134,ETC.

E.) AWARD HEDONIC DAMAGES IN THE FOLLOWING AMOUNTS:ALL DEFENDENTS OF; ($500,000.00/FIVE HUNDRED THOUSAND DOLLARS),FOR THE LOSS OF ENJOYMENT OF LIFE, FREEDOM OF THE UNITED STATES CONSTITUTION,FROM THE WRONGFUL ACT OF DISCRIMINA-TION AGAINST THIS DISABLED INDIVIDUAL,AND,DENIAL OF ENJOYING LIFE AS A DISA-BLED,"QUALIFIED-INDIVIDUAL",WITHOUT BEING MARGINALIZED,AND,DEPRIVING OF THE U.S.CONSTITUTION FREEDOM GUARANTEED TO ALL CITIZENS FREE,AND,BOUND IN THE U.S.

F.) AWARD-DIRECT & GENERAL DAMAGES/IN THE FOLLOWING AMOUNTS:ALL DEFENDENTS; ($500,000.00/FIVE HUNDRED THOUSAND DOLLARS):FOR THE LOSS THAT IS AN IMMEDIATE, NATURAL,AND,FORSEEABLE RESULT OF THE WRONGFUL ACT OF DISCRIMINATING AGAINST THIS DISABLED INDIVIDUAL PROTECTED UNDER THE ADA,TITLE II,REHABILITATION ACT OF 1973,AND,THE LOSS OF ENJOYMENT OF CONSTITUTIONAL RIGHTS & FREEDOMS OF USA.

G.) AWARD PUNITIVE DAMAGES IN THE FOLLOWING AMOUNTS:ALL DEFENDENTS OF; BLACKSTOCK,GALLAGHER,MALETZ,NUNEZ,VIOLATES:THE;DISCRIMINATION OF A DISABLED INDIVIDUAL UNDER ADA-AMERICANS WITH DISABILITIES ACT,ADA-TITLE II,SECTION 504 OF THE REHABILITATION ACT OF 1973,(SECTION-504),SECTION #1977/42 U.S.C.§1981, TITLE VII-OF THE CIVIL RIGHTS ACT OF 1964,42 U.S.C.§12117(a),&,SECTION#505(a)-(1)-REHABILITATION ACT OF 1973,ADA/SECTION#102(B)(5),29 U.S.C.§794a,TITLE#28-U.S.C.§35.108-DEFINITION OF DISABILITY,TITLE#28 U.S.C.§35.130-GENERAL PROHIBI-TIONS AGAINST DISCRIMINATION/ALL SECTIONS,TITLE#II-ADA/SECTIONS#42 U.S.C.§-12131-TO-12134,42 U.S.C.§12112-DISCRIMINATION,CIVIL RIGHTS ACT OF 1964/SEC#-2000e-7[SECTION/708],42 U.S.C.§12202-STATE IMMUNITY,28 C.F.R.§35.130(b)(1)-DISCRIMINATION,42 U.S.C.§1985/CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS,42-U.S.C.§1986/ACTION FOR NEGLECT TO PREVENT,1st/AMENDMENT RETALIATION,DELIBER-ATE INDIFFERENCE,8th/AMENDMENT,14th/AMENDMENT DUE PROCESS CLAUSE,14th/AMENDM-ENT-EQUAL PROTECTION CLAUSE,,18 U.S.C.§245/FEDERALLY PROTECTED ACTIVITIES,DUE-PROCESS CLAUSE,PROCEDURAL DUE PROCESS CLAUSE,ETC,ANY OTHER ADA-VIOLATIONS DEE-MED BY THIS COURT.

H.) NON-MONETARY RELIEF AND DEMANDS:

1.) PLAINTIFF WILL REQUEST NON-MONETARY RELIEF & DEMANDS UPON A FAVORABLE TRIAL JURY VERDICT,INWHICH PLAINTIFF WILL PRESENT NON-MONETARY RELIEF/DEMANDS.

I.) DEFENDENTS UNDER-(42 U.S.C.§12202)-ARE NOT IMMUNE UNDER-(11th)-AMENDMENT-TO THE U.S.CONSTITUTION UNDER DISABILITY STATUTES/LAW.

PURSUANT TO,42 U.S.C.§12202/STATE IMMUNITY:HOLDS;A STATE SHALL NOT BE IMMUNE UNDER THE 11th/AMENDMENT TO THE CONSTITUTION FROM AN ACTION IN,(1)-FEDERAL OR STATE LAW OF COMPETENT JUIRISDICTION FOR VIOLATION OF THIS CHAPTER. IN ANY ACTION AGAINST A STATE FOR A VIOLATION OF THE REQUIREMENTS OF THIS CHAPTER,REMEDIES. INCLUDING REMEDIES BOTH LAW AND IN EQUITY,ARE AVAILABLE FOR SUCH A VIOLATION TO THE SAME EXTENT AS SUCH REMEDIES ARE AVAILABLE FOR SUCH A VIOLATION IN AN ACTION AGAINST,ANY,PUBLIC,OR,PRIVATE,ENTITY OTHER THAN A STATE. PURSUANT UNDER,(U.S. V.GEORGIA,546 U.S.151,(2006):HOLDS;TITLE II ABROGATION OF STATE IMMUNITY INSOFAR AS IT CREATES A PRIVATE CAUSE OF ACTION FOR DAMAGES AGAINST THE STATE FOR CONDUCT THAT ACTUALLY VIOLATES THE 14th/AMENDMENT UNDER THE ADA-AMERICANS WITH DISABILITIES ACT. PURSUANT UNDER,PENNSYLVANIA DEPT.OF-CORRECTIONS V.YESKEY,524 U.S.206,(1998):HOLDS;THAT TITLE II OF THE ADA,PROHIBITING,"PUBLIC ENTITY",FROM DISCRIMINATING AGAINST A,"QUALIFIED INDIVIDUAL", WITH A DISABILITY,ON ACCOUNT OF THAT INDIVIDUALS DISABILITY,APPLIED TO THE STATES PRISONS.

J.) PURSUANT UNDER-(42 U.S.C.§1997e(e):PLAINTIFF HAS PRESENTED PHYSICAL INJURY WHILE IN CUSTODY FOR:EMOTIONAL,MENTAL,PSYCHOLOGICAL,INJURY SUFFERED,MENTAL /EMOTIONAL/PSYCHOLOGICAL,DAMAGES ARE ENTITLED IN THIS PLAINTIFFS CASE.

(AMAKER V.HAPONIK,1999 WL76798*7(S.D.N.Y.):HOLDS;MENTAL & EMOTIONAL,INJURIES MEANS WHAT IT SAYS,STRESS,FEAR,AND,DEPRESSION,AND,OTHER PSYCHOLOGICAL,PHYSICAL IMPACTS.

K.) PLAINTIFFS RETALIATION & TRANSFER/CLAIM & DEMANDS;

1.) (MERRIWEATHER V.COUGHLIN,879 f.2d.1037,1046(2nd.cir.1989):HOLDS;THAT A JURY COULD REASONABLY CONCLUDE THAT PRISONERS WERE TRANSFERED SOLEY BECAUSE THEY EXERCISED THEIR 1st/AMENDMENT RIGHTS,AND,THUS,HAD A VALID CLAIM,WHERE THE PRISONERS WERE TRANSFERED AFTER CRITIQUING THE PRISON ADMINISTRATION. THE PLAINTIFF PRESENTS A RETALIATION,AND,TRANSFER CLAIM,AND,DEMAND,IF,THE STATE OF CONNECTICUT,DEFENDENTS,ITS AGENTS,AND,THE DEPT.OF CORRECTIONS,RETALIATES OR TRANSFERS THIS PLAINTIFF OUTSIDE OF HIS FACILITY,(CHESHIRE.C.I.),AS A PUNITIVE ME-

ASURE OF RETALIATION,AND,IF,THE DEFENDENTS,STATE OF CONNECTICUT,ITS AGENTS, THE DEPT.OF CORRECTIONS,HARASSES,VIOLATES 14th/AMENDMENT PRIVACY RIGHTS,SEARCHES,PHYSICAL ASSAULTS,BEATINGS,SLANDER,LIBEL,FABRICATION OF CHARGES,DISCRIMINATION,ANY UNCONSTITUTIONAL VIOLATIONS OF THIS PLAINTIFFS CIVIL RIGHTS,THE PLAINTIFF WILL INITIATE A RETALIATION & TRANSFER CLAIM AGAINST DEFENDENTS,AND, WILL SEEK,AND,DEMAND THE AMOUNT OF:($500,000.00/FIVE HUNDRED THOUSAND DOLLARS), FROM THE STATE OF CONNECTICUT,ITS AGENTS,DEFENDENTS,UPON ANY TRANSFER,AND/OR-RETALIATION BY THE DEFENDENTS IN THIS CIVIL ACTION.

L.) THE PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO ALL CLAIMS,AND,ALL DEFENDENTS.

M.) GRANT SUCH RELIEF AS IT MAY APPEAR THAT PLAINTIFF IS ENTITLED.

N.) PURSUANT TO-(42 U.S.C.§1988):PLAINTIFF REQUESTS ATTORNEYS FEES,(IF APPLICABLE),INTEREST,COSTS,FEES,COPIES,POSTAGE,FILING FEES,COST OF SERVICE,MARSHAL FEES,ETC,ALL COSTS TO THE PLAINTIFF REIMBURSEMENT IN THIS CASE.

O.) PURSUANT TO:RULE#38,PLAINTIFF DEMAND TRIAL BY JURY:DEMAND.

P.) PURSUANT TO ARTICLE VII OF THE UNITED STATES CONSTITUTION...THE RIGHT OF TRIAL BY JURY-(SHALL)-BE PRESERVED.

Q.) UPON A FAVORABLE JUDGMENT,PLAINTIFF DEMANDS,(U.S.DEPT.OF JUSTICE),THAT AN INVESTIGATION,ORDERED BY THE COURT THROUGH MAGISTRATE JUDGE ON:DISABILITY-HATE CRIMES WITHIN THE CONNECTICUT DEPT.OF CORRECTIONS.

RESPECTFULLY SUBMITTED,

Jan M. Gawlik

GAWLIK,JAN.M.#138888
CCI,900 HIGHLAND AVENUE,
CHESHIRE,CT.06410

DATE: March 7th, 2025

# APPENDIX

EXHIBIT#(A1),
SOCIAL SECURITY DISABILITY DECISION,
DOCTORS REPORTS/NOTES....................................PG#5

EXHIBIT#(A2),
OAP/OFFENDER ACCOUNTABILITY PLAN/PROGRAMS................PG#5

EXHIBIT#(A3),
INMATE REQUEST TO ADA/BLACKSTOCK DATED:10/1/2024,
ACCOMMODATION............................................PG#6

EXHIBIT#(A4),
PLAINTIFFS REASONABLE ACCOMMODATIONS REQUEST/10-2-2024....PG#7

EXHIBIT#(A5),
DR.MALETZ/MEDICAL DETERMINATION,
C5-C6,CERVICAL IMPAIRMENT................................PG#9

EXHIBIT#(A6),
DATED:10/22/2024-INMATE REQUEST UNDER ADA/DR.MALETZ.......PG#11

EXHIBIT#(A7),
APPEAL/ASDA-DIRECTOR/GALLAGHER/DISCRIMINATION.............PG#15

EXHIBIT#(A8),
VIDEO#CCI-VP-25-032/ADA-SHOWER/ADA-TRANSPORT..............PG#17

*NOTE*
EXHIBITS INDICATED AT BOTTOM OF PAGE.

SOCIAL SECURITY ADMINISTRATION
Office of Hearings and Appeals

# DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| John Gawlik (Claimant) | Period of Disability and Disability Insurance Benefits |
| (Wage Earner) | (Social Security Number) |

## INTRODUCTION

On May 28, 1999, the claimant filed an application for Disability Insurance Benefits. The claim was denied initially and on reconsideration, and a request for hearing was timely filed on September 5, 2000. A hearing was subsequently held on March 19, 2001 in Hartford, Connecticut. Appearing and offering testimony at the hearing were the following: the claimant. The claimant alleges disability beginning June 26, 1996 due to a back injury with chronic pain and depression. Mr. Thomas P. Tabellione, an attorney, represents the claimant in this matter.

The general issue is whether the claimant is entitled to a period of disability and Disability Insurance Benefits under sections 216(i) and 223 of the Social Security Act. The specific issue is whether he is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for Disability Insurance Benefits, there is an additional issue pertaining to insured status. A review of the claimant's earnings record reveals that he has earned sufficient quarters of coverage to remain insured at least through the date of this decision.

## EVALUATION OF THE EVIDENCE

The claimant is a thirty-six year-old individual with a high school education plus a two year electrical program. He has past relevant work as a computer grinder. He has not engaged in substantial gainful activity at any time since the alleged onset date. After the date of alleged onset of disability, the claimant worked for three weeks in February and March 1997 in an attempt at lighter duty that was unsuccessful with increased pain.

The claimant has the following medically determinable severe impairments: lumbar disc disease and major depression. Mr. Gawlik has a history of back pain with radiation and numbness to his right leg and foot beginning June 26, 1996 while lifting an eighty pound box at work. An MRI August 12, 1996 demonstrated degenerative changes at L5-S1 with a central disc protrusion (Exhibit 1F/16). Orthopedic surgeon Stanley P. Filewicz M.D. wrote July 13, 1998 that when first seen in July 1996 through March 24, 1997 "he was not capable of working at all", having attempted work briefly with severe pain (Exhibit 7F). He was treated with oral medications and injections without improvement and underwent a right L5-S1 discectomy February 17, 1998 at New Britain General Hospital (Exhibit 5F) with worsening of his pain according to his testimony. Post surgical follow-up in April 1998 corroborated that the claimant was unable to tolerate physical therapy after six visits with increased symptoms (Exhibit 6F).

Neurosurgeon Joseph Aferzon M.D. reported July 22, 1998, "This gentleman presents after disc surgery which had absolutely no benefit for him. He remains with complaints of radicular pain. He is *still* seeing Dr. Brodey for pain management." Dr. Aferzon followed him until May 1, 2000, stating then that "as a neurosurgeon, I have very little to offer him in terms of chronic pain management." He noted, "He is still out of work and is quite debilitated by his back problem" (Exhibit 16F/15,19)

He was evaluated several months following his injury: April 2, 1997 by clinical psychologist Kathryn T. Vullo Ph.D. as part of his pain therapy for depression "as evidenced by disrupted sleep cycle, flattened affect, tearfulness as well as decreased concentration, motivation and libido." Dr. Vullo noted that "Mr. Gawlik is struggling with his pain and physical limitations at this time" and recommended psychological pain management intervention with weekly sessions. Her diagnosis was adjustment disorder with mixed emotional features (Exhibit 3F). James F. Brodey M.D. of Pain Management Associates saw the claimant January 14, 1998 at the request of his neurosurgeon. Dr. Bailey found that he was "significantly depressed and anxious from his pain and leads a pain contingent lifestyle". Analgesic medications were prescribed pending surgery (Exhibit 4F). Dr. Brodey reported on March 13, 2001 that he has been treating Mr. Gawlik since January 1998 for his back pain and depression. His current medications include Percocet, Oxycodone, Soma, Amitriptyline, and Effexor (Exhibit 25F).

The claimant testified that he has numbness in both legs; the right is worse than the left. He has undergone varied treatments for his back pain without success. Some injections helped for "maybe three days". Other injections and surgery made the pain worse. He stated that he is able to stand for twenty-five minutes and sit for thirty minutes at a time. His pain worsens when it rains or snows. He stated that he spends his days reading and takes care of his elderly father. He lies down and rests during the day. He has had no income for five years; his parents have helped him. He requires pain medication daily.

The claimant does not have an impairment that meets or equals the criteria of any listed impairment. A determination must therefore be made of whether he retains the residual functional capacity to perform the requirements of his past relevant work or can adjust to other work.

(EXHIBIT#(A1)

The written evidence supports a finding that the claimant retains the residual functional capacity to lift and/or carry a maximum of ten pounds. His capacity for sedentary work is diminished by his inability to stand and/or walk for two hours in an eight-hour workday or to sit for six hours in an eight-hour workday. He also has moderate limitations in his ability to maintain concentration and attention.

In reaching this conclusion, the undersigned has considered the claimant's own subjective allegations and has found them generally credible in light of his well documented treatment history and corroboration of his chronic pain and depression by his treating sources. He has not been able to recover from his June 1996 injury and resume his previously active lifestyle. Consideration has also been given the reports of the state agency medical consultants as well as to other treating, examining and non-examining medical sources. Those opinions were based on information contained in the record at the time of the state agency reconsideration determination in this case, and no medical records generated or provided after that date were considered by the state examiners. However, additional medical evidence received in the course of developing the claimant's case for review at the hearing, as well as evidence in the form of credible testimony at the hearing, consistent with medical evidence in the record justifies a conclusion as per Social Security Ruling 96-6p that the claimant's impairments are more limiting than was concluded by the state examiners. The claimant's allegations of his limitations due to chronic pain have been considered as required by Social Security Ruling 96-3p and deemed credible.

In his former work as a computer grinder, the claimant was required to perform tasks at an exertional and mental level that is beyond his current capacity.

As the claimant has demonstrated that he lacks the residual functional capacity to perform the requirements of any past relevant work, the burden shifts to the Social Security Administration to show that there are other jobs that the claimant can perform. This determination is made in conjunction with the medical-vocational guidelines of Appendix 2 of Subpart P of the regulations (20 CFR Part 404). Appendix 2 contains a series of rules that direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's age, education, work experience, and residual functional capacity.

Born January 18, 1965, the claimant was thirty-one years old on June 26, 1996. For the purpose of this decision, he is considered to be a younger individual age 18-44. He has at least a high school education and has a skilled work background without skills that are transferable to his residual functional capacity.

The claimant's capacity for the full range of sedentary work is reduced by additional limitations that narrow the range of work he can perform. Social Security Ruling 85-15 states that a substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. Given the claimant's residual functional capacity, which is for a very narrow range of sedentary work and the vocational factors of age, education, and past relevant work experience, there are no jobs existing in significant numbers that the claimant is capable of performing. The claimant is under a disability in accordance with Social Security Ruling 85-15 and section 201.00(h) of the

medical vocational guidelines. A finding of "disabled" may therefore be reached within the framework of medical-vocational rule 201.28.

In accordance with a finding that the claimant has been under a disability beginning June 26, 1996, he is entitled to Disability Insurance Benefits on the basis of his application of May 28, 1999.

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1. The claimant has not engaged in substantial gainful activity since June 26, 1996.
2. The medical evidence establishes that the claimant has the following severe impairments: lumbar disc disease and major depression.
3. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.
4. The claimant's assertions concerning his ability to work are credible.
5. The claimant retains the residual functional capacity to lift and/or carry a maximum of ten pounds. His capacity for sedentary work is diminished by his inability to stand and/or walk for two hours in an eight-hour workday or to sit for six hours in an eight-hour workday. He also has moderate limitations in his ability to maintain concentration and attention.
6. The claimant is unable to perform the requirements of his past relevant work.
7. The claimant's residual functional capacity for the full range of sedentary work is reduced by additional limitations.
8. On June 26, 1996, the claimant was a younger individual age 18-44.
9. The claimant has at least a high school education.
10. The claimant has a skilled work background without skills that are transferable to his residual functional capacity.
11. Considering the claimant's additional limitations, he cannot make an adjustment to any work that exists in significant numbers in the national economy; a finding of disabled is therefore reached within the framework of medical-vocational rule 201.28.
12. The claimant has been under a disability, as defined in the Social Security Act, since June 26, 1996 (20 CFR §404.1520(f)).

(EXHIBIT#(A1)

## DECISION

It is the decision of the Administrative Law Judge that, based on the application filed on May 28, 1999, the claimant is entitled to a period of disability commencing June 26, 1996, and to Disability Insurance Benefits under sections 216(i) and 223, respectively, of the Social Security Act.

H.H. Clark
Administrative Law Judge

MAY 18 2001
Date

(EXHIBIT#(A1)

# LIST OF EXHIBITS

Claimant: John Gawlik SSN:

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| | | **PAYMENT DOCUMENTS/DECISIONS** | |
| 1 | A | Initial Disability Determination by State Agency, Title II, dated 12-27-99 | 1 |
| 2 | A | Reconsideration Disability Determination by State Agency, Title II, dated 6-19-00 | 1 |
| | | **JURISDICTIONAL DOCUMENTS/NOTICES** | |
| 1 | B | Social Security Notice dated 12-29-99 | 4 |
| 2 | B | Request for Reconsideration filed 1-28-00 | 1 |
| 3 | B | Social Security Notice of Reconsideration dated 6-20-00 | 4 |
| 4 | B | Request for Hearing filed 9-5-00 | 1 |
| 5 | B | Letter of Acknowledgement of Request for Hearing dated 9-29-00 | 2 |
| | | **NON-DISABILITY DEVELOPMENT** | |
| 1 | D | Application for Disability Insurance Benefits filed 5-28-99 | 3 |
| 2 | D | Earnings record (dated/certified) 2-16-01 | 2 |
| 3 | D | Detailed Earnings Record (DEQY) for Years 1985-2000, dated 2-16-01 | 4 |

(EXHIBIT#(A1)

# LIST OF EXHIBITS

Claimant: John Gawlik SSN:

## DISABILITY RELATED DEVELOPMENT AND DOCUMENTATION

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 1 | E | Disability Report - Field Office dated 5-28-99 | 4 |
| 2 | E | Disability Report dated 5-28-99 | 10 |
| 3 | E | Symptoms Questionnaire dated 6-13-99 | 3 |
| 4 | E | Daily Activities Questionnaire dated 6-13-99 | 9 |
| 5 | E | Vocational Analysis by state agency dated 12-27-99 | 1 |
| 6 | E | Reconsideration Disability Report dated 1-28-00 | 6 |
| 7 | E | Symptoms Questionnaire dated 2-15-00 | 3 |
| 8 | E | Daily Activities Questionnaire dated 6-13-99 | 9 |
| 9 | E | Claimant's Statement When Request for Hearing is Filed and the Issue is Disability undated | 2 |

## MEDICAL RECORDS

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 1 | F | Treatment/Progress Reports dated 7-29-96 to 4-15-97, with attached Radiology Report dated 8-8-96, EMG and Nerve Conduction Study Reports dated 3-26-97, from Stanley P. Filewicz, M.D. | 18 |
| 2 | F | Medical Records covering the period from 8-8-97 to 10-10-97 from Jonathan Kost, M.D. / Bristol Hospital-Pain Management | 8 |
| 3 | F | Psychological Evaluation Report dated 4-2-97, with attached Treatment/Progress Notes dated 4-10-97 to 12-18-97, from Kathryn T. Vullo, Ph.D./Pain Therapy Consultants, Inc. | 7 |
| 4 | F | Medical Evaluation Report dated 1-14-98, by James F. Brodey, M.D. | 4 |

(EXHIBIT#(A1)

# LIST OF EXHIBITS

Claimant: John Gawlik SSN:

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 5 | F | Hospital Records for admission on 2-17-98 through discharge on 2-18-98 from New Britain General Hospital | 11 |
| 6 | F | Physical Therapy Report dated 4-16-98, from Physical Therapy & Sports Medicine Associates | 1 |
| 7 | F | Medical Report/Letter dated 7-13-98, by Stanely P. Filewicz, M.D. | 1 |
| 8 | F | Medical Report/Letter dated 9-11-98, by Joseph Aferzon, M.D. | 1 |
| 9 | F | Consultative Examination dated 11-12-99 by David Mantell, Ph.D. | 3 |
| 10 | F | Consultative Examination dated 11-19-99 by Steven E. Isaacs, M.D. | 2 |
| 11 | F | RFC - Residual Functional Capacity Assessment - Physical (completed by DDS physician) dated 12-6-99 | 9 |
| 12 | F | Psychiatric Review Technique Form (completed by DDS physician) dated 12-27-99 | 10 |
| 13 | F | Medical Report/Letter dated 2-3-00, by James F. Brodey, M.D. | 1 |
| 14 | F | Medical Report/Questionnaire dated 4-19-00, by James F. Brodey, M.D. | 3 |
| 15 | F | Consultative Examination dated 4-25-00 by Jonathan Dixon, M.D. | 2 |
| 16 | F | Treatment/Progress Reports dated 9-5-96 to 5-1-00, with attached Radiology Reports dated 4-11-97 to 1-10-98, from Joseph Aferzon, M.D. | 24 |
| 17 | F | RFC - Residual Functional Capacity Assessment - Physical (completed by DDS physician) dated 6-16-00 | 9 |
| 18 | F | Psychiatric Review Technique Form (completed by DDS physician) dated 6-19-00 | 9 |
| 19 | F | Medical report by Dr. Ira Spar, M.D. dated 2\26\91 | 1 |
| 20 | F | Medical Report by New Britain General Hospital dated 2\12\93 to 2\15\94 | 15 |
| 21 | F | MRISCAN of the Lumbosacral Spine with Hospital Record attached dated 8\12\96 8\18\97 | 8 |
| 22 | F | Medical Report by Connecticut Valley Neurosurgical Associated dated 9\5\96 7\24\97 | 16 |

(EXHIBIT#(A1)

LIST OF EXHIBITS

Claimant: John Gawlik SSN:

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 23 | F | Pain Therapy Report by Specialists in Pain Management Rehabilitation Center dated 11\1\96 to 3\20\97 | 32 |
| 24 | F | Postoperative Diagnosis Report by New Britain General Hospital dated 2\17\98 | 3 |
| 25 | F | Medical letter by Dr. James F. Brodey Pain Specialsit dated 3\13th 2001 | 1 |

(EXHIBIT#(A1)

MRI of New Britain
100 Grand Street
P.O. Box 1058
New Britain, Connecticut 06050-1058
860-224-5674 (224-5MRI)
FAX 860-826-4991

02-55-75

Neal D. Barkoff, M.D.
Jeffrey S. Blau, M.D.
Helen L. Chisholm, M.D.

August 12, 1996

Stanley P. Filewicz, M.D.
40 Hart Street
New Britain, CT 06052

Dear Dr. Filewicz:

Patient : Gawlik, John (DOB:01/18/65)
Exam date: August 8, 1996

MRI SCAN OF THE LUMBOSACRAL SPINE

MRI of the lumbar spine is obtained utilizing sagittal T1 and turbo spin echo T2 weighted sequence. Additional axial T1 weighted study is obtained through the L3-4, L4-5 and L5-S1 levels.

FINDINGS:

The study demonstrates mild degenerative disc disease limited to the L5-S1 level where there is signal loss noted on T2 weighted sequence. In addition, a small central disc protrusion is present with no focal herniation, central or foraminal narrowing noted. The remaining disc levels appear normal, with mild straightening of the normal lumbar curvature present. The conus medullaris is normal; as is the marrow compartment.

IMPRESSION:

Mild degenerative changes limited to the L5-S1 level, with small central disc protrusion, as described. No additional abnormalities are demonstrated.

Thank you for referring this patient.

Sincerely yours,

Neal Barkoff, M.D.

NB/bmr
29

(EXHIBIT#(A1)

EXHIBIT 2

PAGE 8

MRI of New Britain
100 Grand Street
P.O. Box 1058
New Britain, Connecticut 06050-1058
860-224-5874 (224-5MRI)
FAX 860-826-4891

02-55-75

Joel Oelber, M.D.
Alfred G. Gladstone, M.D.

Jonathan D. Kirsch M.D.
Steven A. Siler, M.D.

January 12, 1998

Dr. John Harbut
25 Clinton Street
New Britain, CT 06053

Dear Dr. Harbut:

Patient : Gawlik, John (DOB:01/18/65)
Exam date: January 10, 1998

MRI SCAN OF THE CERVICAL SPINE

Multiplanar MRI examination of the cervical spine is performed. No plain films or prior scans are available for comparison.

FINDINGS:

Mild reversal of the normal cervical lordosis is identified with the apex at C5-6. The vertebral signal, contour, and alignment is otherwise unremarkable. The foramen magnum is patent.

At C5-6, a small right paracentral disc herniation is present. There is narrowing of the anterior spinal subarachnoid space, without evidence of encroachment on the cord. Slight narrowing of the right neural foramen is noted. The left neural foramen is unremarkable.

The remaining visualized intervertebral levels in the cervical spine and upper thoracic spine are unremarkable. There is no evidence of other disc herniation. The spinal canal and neural foramina are patent. The cord itself has normal signal, contour and size. The visualized posterior fossa contents are unremarkable.

IMPRESSION:

1. Right C5-6 small paracentral disc herniation, with narrowing of the anterior spinal subarachnoid space and minimal narrowing of the right neural foramen.
2. Otherwise unremarkable exam.

Thank you for referring this patient.

Sincerely yours,

AG

Alfred Gladstone, M.D.

AG/bmr
A3520

(EXHIBIT#(A1)

CONNECTICUT VALLEY NEUROSURGICAL ASSOCIATES
40 HART STREET, BLDG. A, 3RD FLOOR
NEW BRITAIN, CT 06052
TELEPHONE (860) 229-3311
FAX (860) 225-0122

JONATHAN BALLON, M.D.
JOSEPH AFERZON, M.D.

RUTH KOTLER, P.A.-C.

July 24, 1997

RE: John Gawlik

The patient is a 36-year-old gentleman who presented with a long-standing history of incapacitating back and right leg pain. His previous visit was on June 27, 1997. I obtained a myelogram, and I think it is a peculiar finding that the right S1 root sleeve does not fill as much as the left one does. There is also an associated small broad disc herniation slightly to the right. He still has no signs of nerve impingement, but he has a lot of signs of nerve irritation on examination. On further examination, I was wondering whether some of the pain is facetogenic. I am still quite reluctant to offer surgical therapy to him, although if he fails every other modality, I told him I would be prepared to decompress the right S1 root if he is willing to accept a 60% chance of surgical success. I will refer him for facet injections, and I will see him in follow-up after the injections.

Joseph Aferzon, M.D.

JA/jr
(7307.8)

cc: Stanley Filewicz, M.D.

(EXHIBIT#(A1)

The confidentiality of this record is required under Chapter 899 of the Connecticut General Statutes. This material shall not be transmitted to anyone without written consent or other authorization as provided in the aforementioned statutes.

BRISTOL HOSPITAL, INC.
Bristol, Connecticut

PAIN MANAGEMENT

NAME: GAWLIK, JOHN

DATE OF PROCEDURE: 09/05/97

HISTORY NO: 2291996

FLOOR: -00-

MED. REC. NO: 231507

PHYSICIAN: Jonathan Kost, M.D.

---

PREOPERATIVE DIAGNOSIS: Facet syndrome.

POSTOPERATIVE DIAGNOSIS: Facet syndrome.

OPERATION: Right (L5-S1, L4-L5 and L3-L4) facet joint injections.

ANESTHESIA:

---

RECENT HISTORY: The patient presents today with the same pain complaints as his initial presentation. He complains of pains in his lower back region, right buttock and right lower extremity. He states that he has had a few days of significant exacerbations of his pain of which he attributes to weather changes.

PHYSICAL EXAMINATION: Unchanged from prior examination. There is continued increased pain upon extension and rotation of his lumbosacral spine to the right.

PROCEDURE NOTE: With fluoroscopic guidance the above mentioned facet joints were identified. Aseptic technique. A 25 gauge needle (spinal) was used to create a skin wheel over the above mentioned facet joints. The needle was advanced down to each facet joint with fluoroscopic guidance. Negative aspiration. 1 cc of 0.25% Marcaine and 10 mg of DepoMedrol was injected at each facet joint. There were no complications. The patient tolerated the procedure very well.

PLAN: The patient is to report back to the Pain Management Center in one week with a pain report status-post todays injection.

Jonathan Kost, M.D.

JK:dl DD: 09/05/97 DT: 09/07/97 Job ID: #7006



(EXHIBIT#(A1)

Patient Name: GAWLIK, JOHN
History No: 2291996
ORIGINAL

New Britain General

NAME: GAWLIK, JOHN

UNIT NO: 66-81-66

DATE: 02/17/98
LOCATION: OR

SURGEON: JOSEPH AFERZON, MD
ASSISTANT:

PREOPERATIVE DIAGNOSIS: Right S1 radiculopathy. Right L5-S1 disc herniation.

POSTOPERATIVE DIAGNOSIS: Right S1 radiculopathy. Right L5-S1 disc herniation.

OPERATION: Right L5-S1 discectomy.

FINDINGS: The patient is a 33-year-old gentleman who presents with chronic back and right leg pain. He failed every conceivable conservative therapy including multitudes of injection and pain management strategies. Again, the patient was consulted before surgery and due to significant signs of nerve inflammation and a few signs of nerve compression as well as fairly subtle findings on myelogram, his chances of doing well intraoperatively were offered at 60 to 70%. Nevertheless, he remained quite debilitated by his pain and since there was no strategy that has given him any relief from his pain and outlook for spontaneous recovery that far out, was rather unlikely. It was decided to proceed with surgery.

PROCEDURE: The patient was brought to the room and placed in the supine position after uneventful intubation was turned lateral with the right side up. An x-ray was taken which marked the needle to be at L5-S1 interspace. Appropriate incision was made. This measured an inch and the incision was carried out after routine prepping and draping and injection of Marcaine/epinephrine into the incision site. The incision was initially carried out with a skin knife and then extended with monopolar electrocautery through a rather small subcutaneous fat layer. Fascia was exposed and incised approximately 1 cm over the midline with Mayo scissors. Using a Cobb periosteal elevator, the muscle was retracted off L5 and S1 spinous process and lamina in a bloodless subperiosteal fashion. Muscle attachment to the lamina of L5 and L5-S1 facet was cut sharply with Mayo scissors and retraction was maintained with a Farley retractor. Curet was used to undermine L5 lamina and detach the ligament and then a Kerrison punch and Leksell were used to produce a very small laminotomy of L5. A very small amount of medial facet of L5-S1 was removed as well. A small foraminotomy of S1 was performed, all using Kerrison punch. The ligament was removed by undermining with dental, incising with the knife over the dental and then removing it piecemeal with Kerrison punches. There apparently was a large vein tethering over the nerve root and producing the small defect in the nerve. Also there was small impression in the nerve root from superior facet of S1. The nerve was coagulated and sharply cut and then the nerve root was moved medially, exposing the small herniation and a bulge

EXHIBIT#(A1)

New Britain General

NAME: GAWLIK, JOHN UNIT NO: 66-81-66

Page: 2

underneath. The ligament was incised with the knife after the nerve was protected with a nerve root retractor. Hemostasis was achieved with bipolar electrocautery and multiple disc fragments were removed from within the disc space. After I was certain that there were no large fragments left and was happy with decompression, further hemostasis was achieved. Depo-Medrol was placed and Surgicel was placed over the Depo-Medrol to minimize scarring from overlying muscle. Marcaine was injected into the muscle itself, fascia was closed with 0 Vicryl stitches. Two 2-0 Vicryl subcutaneous stitches were placed and 3-0 Vicryl subcuticular stitches were used to close the skin. This was dressed with Benzoin and steri-strips and Telfa was applied as a dressing. The patient was turned prone and extubated in stable condition. The patient received one gram of Ancef perioperatively. There were no complications. He tolerated the procedure well. There was no Foley catheter inserted for the procedure. Estimated blood loss was 50 cc.

JOSEPH AFERZON, MD

JA/sp1
D: 02/18/98 8:57 P
T: 02/20/98 11:51 A
189024

CC: JOSEPH AFERZON, MD

(EXHIBIT#(A1)

PT. NAME : GAWLIK,JOHN
MED.REC.#: 668166
ACCT.# : 1024530
D.O.B. : 01/18/1965
AGE/SEX : 33Y M

New Britain General
100 Grand Street
New Britain, CT 06050

ATT. PHYS: AFERZON MD,JOSEPH
ORD. PHYS: AFERZON MD,JOSEPH
COPY TO

ACC. #: S98-01675

DATE COLL : 02/17/1998 DATE REC'D: 02/18/1998
ORDERED FROM: OPERATING ROOM

CLINICAL DIAGNOSIS: DEGENERATIVE DISC

SPEC LABEL/DESC: : DISC

FROZ SECT/OR CONSULT: NO

GROSS DESCRIPTION: (Ellen Bonanno, P.A.) Received in formalin are multiple, irregular to scabrous, tan-white cartilaginous tissue fragments which measure 2.9 by 2.2 by 0.7 cm in aggregate. No suspicious masses or lesions are seen grossly. Representative sections are submitted in one cassette.

Lwm

TOTAL SLIDES/SPECIAL STAINS: 1 H & E

FINAL DIAGNOSIS:
Fragments of fibrocartilage consistent with intervertebral disc. Par #3

-SANCHEZ M.D., HAROLD, PATHOLOGIST

D. 2/19/98
T. 2/20/98 jlc
HARRY SANCHEZ, MD ELECTRONIC SIGNATURE
Date Finalled: 02/20/1998

(EXHIBIT#(A1)

Medical Records

PRINT DATE: 02/20/1998 PRINT TIME : 09:08

CONNECTICUT VALLEY NEUROSURGICAL ASSOCIATES
40 HART STREET, BLDG. A, 3RD FLOOR
NEW BRITAIN, CT 06052
TELEPHONE (860) 229-3311
FAX (860) 225-0122

JONATHAN BALLON, M.D.
JOSEPH AFERZON, M.D.

RUTH KOTLER, P.A.-C.

March 4, 1998 RE: John Gawlik

This is the first follow-up visit for this 33-year-old gentleman. Apparently, the discectomy has not helped his pain. He still has a lot of radicular complaints in the right lower extremity. There is some local swelling around the wound site which is consistent with seroma. It does not appear to be infected. We will observe it for now. I will see him back in one month.

Joseph Aferzon, M.D.

JA/jr
(05208.5)

cc: Stanley Filewicz, M.D.

(EXHIBIT#(A1)

DECADE OF THE BRAIN 1990-2000

CONNECTICUT VALLEY NEUROSURGICAL ASSOCIATES
40 HART STREET, BLDG. A, 3RD FLOOR
NEW BRITAIN, CT 06052
TELEPHONE (860) 229-3311
FAX (860) 225-0122

RUTH KOTLER, P.A.-C.

JONATHAN BALLON, M.D.
JOSEPH AFERZON, M.D.

July 22, 1998

RE: John Gawlik

This gentleman presents after disc surgery which absolutely had no benefit for him. He remains with complaints of radicular pain. He is still seeing Dr. Brody for pain management. I have very little treatment to offer him. He wants to see me in a couple of months to follow-up and we will schedule him.

Joseph Aferzon, M.D.

JA/ms
(727.4)

(EXHIBIT#(A1)

RECEIVED
MAR 15 2001
O H A
(5 019)
TEORF

Joseph Aferzon, M.D., LLC
Neurological Surgeon

*Assistant Professor of Surgery University of Connecticut School of Medicine*

Tel: (860) 832-4664
Fax: (860) 832-4665

Old Post Office Plaza, 114 West Main Street, Suite 101, New Britain, CT 06051
Bristol Hospital, Brewster Road, Bristol, CT 06010

October 29, 1999

Re: John Gawlik

He presents with a persistent complaint of right leg soreness, numbness and back pain. I think all of this is pretty much unchanged. It does fluctuate with the weather, though. As per my previous dictation, I think that represents some chronic injury to the lumbar nerve.

Again, I acknowledge the fact that this is a chronic issue. There is again nothing surgical that can be rendered to improve his function or quality of life.

Joseph Aferzon, M.D.

JA/las
(102999-10)

(EXHIBIT#(A1)

Joseph Aferzon, M.D., LLC
Neurological Surgeon

*Assistant Professor of Surgery University of Connecticut School of Medicine*

Tel: (860) 832-4664
Fax: (860) 832-4665

Old Post Office Plaza, 114 West Main Street, Suite 101, New Britain, CT 06051
Bristol Hospital, Brewster Road, Bristol, CT 06010

May 1, 2000

Re: John Gawlik

I had a conversation with John. Basically, I am going to discharge him from my care, but I will be happy to see him should there be any further questions or concerns.

As it stands right now, he has got a chronic injury to his right sciatic nerve, and he also reports some discogenic discomfort with both back pain and a feeling of numbness going down both of his legs. This is intermittent and varies from day to day and from different parts of the day. He is still out of work and is quite debilitated by his back problem.

As a neurosurgeon, I have very little to offer him in terms of chronic pain management. I certainly do not think he needs any further surgical intervention. He is currently being treated by Dr. Brodey, who is offering him pain management, and our visits have been just a formality to maintain contact and have not resulted in any distinct treatment in the last year or so. I think this probably wastes his time, and my time as well.

Should there be any acute issues, I will be happy to see him back.

Joseph Aferzon, M.D.

JA/las
(050100-7)

(EXHIBIT#(A1)

Joseph Aferzon, M.D., LLC
Neurological Surgeon

*Assistant Professor of Surgery University of Connecticut School of Medicine*

Tel: (860) 832-4664
Fax: (860) 832-4665

Old Post Office Plaza, 114 West Main Street, Suite 101, New Britain, CT 06051
Bristol Hospital, Brewster Road, Bristol, CT 06010

December 13, 2005 RE: John Gawlik

This gentleman presents in follow up. He underwent disc surgery in February of 1998. At that time he had a discectomy done at L5-S1 on the right side for radiculopathy. He also presents with degenerative disc disease at 5-1 disc. He states that his back pain and settling of discs have rendered him a little more pain lately.

At this point, his diagnosis remains unchanged and his clinical course remains unchanged. He is also being treated for depression with Dr. Brody as well. It seems like he is tolerating his current course of pain management with Dr. Brody.

At this point, he will continue further medical management and pain counseling and this would be present for the foreseeable future. His antidepressant medication should be continued. I think his symptoms remain status quo. I concur with Dr. Brody that he should continue to be totally and permanently disabled.

Joseph Aferzon, MD

JA:ag

DICTATED NOT READ

(EXHIBIT#(A1)

email: jaferzon@excite.com

E3·34

# Offender Accountability Plan

**Connecticut Department of Correction/Board of Pardons and Paroles**

CN 9701
REV 1/10/12

| | |
|---|---|
| Inmate name: **Gawlik, Jan** | Inmate number: **138888** |

| | | | |
|---|---|---|---|
| DOB: | Sentence date: **1/9/15** | Sentence: **60Y** | PED: |
| Max EOS: **10/13/2071** | Offense(s): | | |

Upon being fully or partially sentenced to the Department of Correction (DOC) and periodically thereafter, assessment, orientation and classification meetings shall be conducted to determine the programs and services that you should participate in during your term of incarceration. You shall participate in a series of assessments including but not limited to a Risk and Need Assessment (Objective Classification System) and a Treatment Program Assessment Instrument (TPAI). Adjustment to the requirements of institutional living, conduct and behavior in relation to other inmates and staff, and achievements in recommended programming shall also be taken into consideration in assigning programs. Risk and Need assessment and the TAPI shall be used to initiate and monitor your Offender Accountability Plan (OAP). This plan may be modified at any time throughout your incarceration and/or period of community supervision.

The DOC shall use your OAP to schedule, track and monitor your programs, jobs and services. Failure to comply with OAP recommendations, or conduct which results in discipline or increases in risk level, shall negatively impact your earning of Risk Reduction Earned Credit (RREC) and/or chances of DOC supervised community release and/or parole.

If you have a parole eligible sentence, a staff member from the Board of Pardons and Paroles (BOPP) shall meet with you to discuss OAP program expectations at your permanent facility assignment, and shall explain on what basis the Board of Pardons and Paroles shall make future release decisions. The BOPP and DOC shall work with any parole eligible person to ensure compliance with Orientation and OAP requirements prior to being granted parole.

Please note that all OAPs shall have a reentry component that shall address issues prior to release to community programs such as halfway houses, transitional supervision and parole. Offenders who will be discharging end of sentence will have an OAP consisting of reentry and discharge planning, including but not limited to identification procurement.

Your institutional conduct and participation in recommended OAP programs and services is the key to your successful reintegration and shall be monitored throughout the course of your incarceration. It is your responsibility to review your OAP with your counselor/DOC staff member during your incarceration and/or period of community supervision.

***Information regarding program participation shall be maintained in your master file.***

The following are your specific program recommendations:

| | | |
|---|---|---|
| 1. | Code: **I1** | Title: **Job Assignment** |
| 2. | Code: **26** | Title: **Anger mgmt** |
| 3. | Code: | Title: |
| 4. | Code: | Title: |
| 5. | Code: | Title: |

**I have reviewed the above recommendations and understand that I am expected to enroll in and complete the above programs.**

| | |
|---|---|
| Inmate signature: x Jan Gawlik | Date: 1-13-15 |
| DOC Staff signature: Riccio | Date: 1-13-15 |
| Parole Staff signature: (EXHIBIT#(A2)) | Date: |

cc: Inmate master file – section 6

CN 9601
REV
04/30/2021

# Inmate Request Form

Connecticut Department of Correction

| | | | |
|---|---|---|---|
| Inmate name: Gawlik, Jan | | Inmate number: #138888 | |
| Facility/Unit: C.C.I. | Housing unit: NB1-107 | Date: 12/16/2024 | |
| Submitted to: FOI / Testa @ C.C.I. | | | |

Request:

FOI / Testa,

Please, forward a Copy(s) of my (OAP-Plan), at the time of Assessment @ Walker C.I. (2015)

Thankyou,
Gawlik,
#138888
N1-07

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name): Testa — Title: Correction Officer

Action taken and/or response: F.O.I Received your request: When your documents are ready you will be notified.

RECEIVED DEC 19 2024

continue on back if necessary

(EXHIBIT#(A2)

Staff signature: [signature] — Date: 12/19/2024

# Inmate Request Form

Connecticut Department of Correction

CN 9601 REV 04/30/2021

| | | | |
|---|---|---|---|
| Inmate name: Gawlik, Paul | | Inmate number: #138333 | |
| Facility/Unit: C.C.I. | Housing unit: N1-07 | Date: 10/1/2024 | |
| Submitted to: Capt. Blackstock / N1-Unit Manager. | | | |

Request:

Mr. Blackstock – I am next on 2nd shift job list as Tierman!

I – I Require Reasonable Disability Accommodations, as I am A "Qualified Individual" under ADA, Title II, Rehabilitation Act of 1973!

I Require Appt Accommodations for 2nd shift Tier Job.

continue on back if necessary

Previous action taken: Please Initiate a meeting for Both of us to State our Positions without Interruption and Abundant Time.

Respectfully
Gawlik
#138333
N1-07

continue on back if necessary

| | |
|---|---|
| Acted on by (print name): | Title: |

Action taken and/or response:

continue on back if necessary

| | | |
|---|---|---|
| Staff signature: | (EXHIBIT#(A3) | Date: |

# Request for Reasonable Accommodations

## Connecticut Department of Correction

CN 101902
REV 9/24/21

*(SOCIAL SECURITY DISABILITY RULING/OPERATIVE NOTES/DOCTORS NOTES/ENCLOSED)*

| | |
|---|---|
| Facility/Unit: C.C.I./NB1-107 | Date: 10/2/2024 |
| Inmate Name: GAWLIK,JAN.M. | Inmate Number: #138888 |

Describe the condition(s) and situation (e.g. unit, cell, program, communication or daily living activity) that present a need for accommodation(s): THIS INMATE,AS A DISABLED,"QUALIFIED INDIVIDUAL",UNDER THE ADA-AMERICANS WITH DISABILITIES ACT/TITLE II,REHABILITATION ACT OF 1973,AND TITLE VII OF THE CIVIL RIGHTS ACT/1964,REQUIRES REASONABLE ACCOMMODATIONS & DUE TO PROSPECTIVE TIER WORKER IS UNABLE TO PERFORM CERTAIN TIER REQUIREMENTS WHICH INSTITUTE THE TWISTING OF LOWER BACK DUE:TO L5-S1/LAMINECTOMY,AND TWISTING OF CERVICAL C5-C6,DUE TO PROTUSION OF DISC AT BASE OF NECK AREA.

Type(s) of service or accommodation requested/preferred: THIS INMATE AS A DISABLED,"QUALIFIED-INDIVIDUAL",UNDER,(ADA),ETC,AS PROSPECTIVELY EMPLOYED BY DOC/TIER WORKER IS REQUIRING UNDER REASONABLE ACCOMODATION THAT THE CREDIBLE INMATE--DOC/JOB, THIS INMATE CAN,ONLY,PERFORM IS:SWEEPING THE TIER,BOTTOM TIER ONLY,AND,WIPE THE TABLES AFTER INCARCERATED HAVE COMPLETED THEIR MEALS ON THE 2nd/SHIFT POSITION WHICH IS OFFERED TO THIS INMATE. INMATE CANNOT CLEAN SHOWERS,NOR, MOP THE FLOORS WHICH CONSISTS OF CONTINUAL TWISTING,BENDING,REACHING WITH A CONTINUAL FORCE WHICH CAUSES THIS DOCUMENTED DISABLED INDIVIDUAL EXTREME & PAINFUL CONDITION. DUE TO NO PHYSICAL THERAPY IN DOC,GAWLIK MUST EXERCISE @ LEISURE INTERVALS.

| | |
|---|---|
| Inmate Signature: [signature] | Date: 10/2/2024 |

**RETURN THIS FORM TO THE UNIT ADA COORDINATOR**

YOUR REQUEST HAS BEEN:

☐ Approved as requested ☐ Modified ☐ Referred for further review ☐ Denied

Comments: Inmate Gawlik, Jan #138888 I spoke with Dr. Maletz and reviewed your medical chart about any relevant issues about your structural integrity or any physical barriers you may have to prevent your from preforming normal duties in the capacity of a unit tiermen. Inmate Gawlik there is nothing medically indicating that you can not perform your duty in the capacity of a tiermen.

ADA Coordinator Name (print):

| | |
|---|---|
| Signature [signature] | Date: |

**REASONABLE ACCOMMODATION DETERMINATION**

☐ Approved as requested ☐ Modified (see comments below) ☐ Denied (see comments below)

Comments:

Inmate Gawlik your Request for Reasonable Accommodations was denied.

| | |
|---|---|
| Unit Administrator: [signature] | Date: 10/18/24 |

If denied an accommodation request you have the right to appeal the decision in accordance with Administrative Directive 9.6, Inmate Administrative Remedies

(EXHIBIT#(A4)

# Reasonable Accommodation Management Plan

Connecticut Department of Correction

CN 101903
REV 9/24/21

| | |
|---|---|
| Facility/Unit: CHESHIRE.C.I./NB1-107 | Date: |
| Inmate name: GAWLIK,JAN.M. | Inmate number: #138888 |

***The following accommodations /devices shall be recognized for the above inmate***
*(circle/check all that apply)*

| Area/Topic | Accommodation | | |
|---|---|---|---|
| Medical Devices | **CPAP, braces, Wheel chair, cane, walker, orthopedic device** Heading aids | | |
| Housing | ☐ bottom /top tier | ☐ MH housing | ☐ accessible housing |
| Cell Status | ☐ Single Cell | ☐ Cellmate (Restrictions): | ☐ Cellmate (No restrictions) |
| Transport | Front cuffing soft cuffing flex cuffing no black box wheelchair van | | |
| Auxiliary Aids | walking stick, braille document, screen reader, magnifying lens, inmate buddy / walker | | |
| Self-care | Raised toilet seat, accessible shower grab bars, feedback | | |
| Communication needs | TTY / VRI / VRS / amplifier /interpreter | | |
| Other | | | |

## Inmate Acknowledgement

- I acknowledge that the above accommodations currently meet my needs.
- I acknowledge that I can request changes if my condition change
- I acknowledge that my plan will be reviewed if and when I change facilities to be adapted as needed

| | |
|---|---|
| Inmate Name: GAWLIK,JAN.M. | Inmate Number: #138888 |
| Signature | Date: |

## Facility ADA Coordinator

Staff Comments:

| | |
|---|---|
| Name (print): | Title: |
| Signature: | Date: |

(EXHIBIT#(A4)

# Inmate Request Form

Connecticut Department of Correction

CN 9601 REV 04/30/2021

| | |
|---|---|
| Inmate name: GAWLIK, JAN | Inmate number: #138888 |
| Facility/Unit: Cheshire. C.I. | Housing unit: NB1-107. | Date: 7/31/2023 |

Submitted to: DR. Maletz / Orthopedic @ Cheshire. C.I.

Request: DR. Maletz, -

I obtained an MRI. In August/2022. I am in pain on my neck area, C5-C6, - Disc Petrusion which is causing my Right Arm to go numb. My Arm falls Asleep now Per-manently and (I) am incurring Head-Aches, Numbness, ect. My L5-S1, Lower Back Area is in Pain Including Carpol Tunnel on My Right Wrist. It is (1) year now

continue on back if necessary

Previous action taken: with No foreseeable Intervention from you as Cheshire Orthopedic. DR. Maletz, I Require Adequate Medical Care for my Painful Conditions. Please see me. A.S.A.P.

continue on back if necessary

Acted on by (print name): MALETZ

Title: Respectfully Gawlik #138888 N1-07

Action taken and/or response:

[Note: ATTACHED To Grievance dated 14 August 2023] Addressed As soon as I saw worsening Symptoms

→ OSS for ORTHO SPINE SURGERY UConn Placed 10 August 2023

(EXHIBIT#(A5)

continue on back if necessary

Staff signature: [signature] MD

Date: 17 August 2023

# MRI cervical spine WO contrast (Acc:4069543) (Order 53802350)

Status: Final result

## PACS Images

Show images for MRI cervical spine WO contrast

## Study Result

Narrative & Impression
EXAM: MRI CERVICAL SPINE WITHOUT CONTRAST

INDICATION: Cervical disc disease since 1996 prior MRI. Steadily worsening lower posterior neck pain with radiating pain/paresthesias. M54.2 Cervicalgia

TECHNIQUE: Multiplanar MR imaging was obtained through the cervical spine using a 1.5 Tesla magnet. Exam was performed without IV contrast as per departmental protocol.

COMPARISON: None available.

FINDINGS:
Visualized portions of the posterior fossa appear unremarkable. Focal kyphosis at C5-C6 with grade 1 retrolisthesis of C5 on C6. Straightening of the normal cervical lordosis. Vertebral bodies are normal in height. Intervertebral discs appear unremarkable. Mild degenerative endplate marrow edema involving the inferior endplate of C5. Marrow signal is otherwise preserved. The visualized cord signal is normal. There is no syrinx.

Axial images reveal the following:
C2-C3: No spinal canal stenosis or neural foraminal narrowing. Left-sided facet arthropathy.

C3-C4: No spinal canal stenosis or neural foraminal narrowing. Left-sided facet arthropathy.

C4-C5: No spinal canal stenosis or neural foraminal narrowing. Left-sided facet arthropathy.

C5-C6: Broad-based posterior disc protrusion with ventral effacement of the CSF and mild spinal canal stenosis. Bilateral, right greater than left uncovertebral joint hypertrophy resulting in severe right and mild-to-moderate left neural foraminal narrowing.

C6-C7: No spinal canal stenosis or neural foraminal narrowing.

C7-T1: No spinal canal stenosis or neural foraminal narrowing.

Paraspinal soft tissues appear normal. Partially imaged thyroid appears normal.

COPY

IMPRESSION:

1. C5-C6 broad-based posterior disc protrusion with ventral effacement of the CSF resulting in mild spinal canal stenosis.

2. Bilateral right greater than left uncovertebral joint hypertrophy at C5-C6 resulting in severe right and mild-to-moderate left neural foraminal narrowing.

3. Multilevel left-sided facet arthropathy.

(EXHIBIT#(A5)

# Health Services Administrative Remedy- Level 1

Connecticut Department of Correction

CN 8901
Rev. 05/06/2021

| ☒ Facility/Unit: C.C.I./NB!-107 | Date: 8/14/2023 |
|---|---|
| Inmate Name: G AWLIK,JAN.M. | Inmate Number: #138888 |

**Section 1: FILING A HEALTH SERVICES ADMINISTRATIVE REMEDY LEVEL 1**

**Prior to filing a request for Health Services Administrative Remedy, an inmate must attempt informal resolution. Attach a copy of the CN 9601, Inmate Request form, with the staff member's response or explain in Section 3 why the form is not attached.**

**Health Services Administrative Remedies must be filed within 30 days of the occurrence or discovery of the cause of the concern.**

Reason for Health Services Administrative Remedy. Check the appropriate box:
☐ Diagnosis/ Treatment ☒ Administrative

**Section 2: OTHER REQUIREMENTS FOR USING THE HEALTH SEVICES ADMINITRATIVE REMEDY PROCEDURE**

**Read and comply with the instructions below, then complete Section 3 (State the Problem and Requested Resolution)**

- The length of this request shall be restricted to the space available in Section 3 and one (1) additional 8 1/2 x 11-inch page.
- This request for a Health Services Administrative Remedy must be free of obscene or vulgar language or content.
- This request for a Health Services Administrative Remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- Informal resolution attempts and responses shall be attached or explained if no attachment is available.
- A repetitive request for a specific Health Services Administrative Remedy will be rejected if
  - a. a final response has already been provided;
  - b. there has been no change in any circumstances that would affect the response; and
  - c. the initial request for the Health Services Administrative Remedy is still in process.

**Section 3: STATE THE PROBLEM AND REQUESTED RESOLUTION**

Provide any factual information that is applicable. Including any responses from staff. State the action that you believe should be taken to resolve this problem. PLEASE PRINT. ON OR ABOUT AUGUST/2022,I OBTAINED AN MRI FOR MY NECK AREA OF C5-C6,DUE TO SEVERE NECK PETRUSION OF THE DISC ON MY RIGHT SIDE OF MY BODY WHICH IS CAUSING NUMBNESS TO MY RIGHT ARM,FINGERTIPS,AND HAND TO BE IN EXTREME PAIN,I HAVE LOWER BACK PAIN WITH SURGERY IN 1998 OF A LAMINECTOMY IN THE REMOVAL OF A PORTION OF MY DISC AREA. I HAVE CARPUL TUNNELL IN MY RIGHT HAND & IS CAUSING MY BONES IN MY NUCKLES TO HURT AND BEND. I HAVE BEEN WAITING FOR A ORTHOPEDIC IN CHESHIRE.C.I.,FOR A YEAR NOW SINCE I OBTAINED AN MRI FROM UCONN IN AUGUST OF 2022. THE CONTINUAL DELAY OF ORTHOPEDIC/DR.MALETZ,AND NO INTERVENTION TO PROPERLY TREAT THIS PATIENT IS NOW DELIBERATE INDIFFERENCE.THE LACK OF MEDICAL STAFF IN THE FORM OF THE ONLY ORTHOPEDIC WITHIN THE ENTIRE DEPT.OF CORRECTIONS IS UNACCEPTABLE AND DUE TO COST OF HIRING ADDITIONAL STAFF DENIAL FALLS UNDER 8th AMENDMENT,OF THE U.S.CONSTITUTION. DR.MALETZ IS DENYING THIS PATIENT TREATMENT THAT HAS BEEN REQUESTED BY MEDICAL DEPT.REPEATEDLY IS CAUSING THIS PATIENT TO REMAIN IN EXTREME PAIN WITHOUT ANY INTERVENTION BY STAFF OF CORRECTIONS.(LAVENDER V.LAMPERT,242 f.supp.2d.821,843,(D.OR.2002),HOLDS; THE FAILURE OF MEDICAL STAFF TO RESPOND TO ONGOING COMPLAINTS OF CHRONIC AND DEBILITATING PAIN COULD CONSTITUTE DELIBERATE INDIFFERENCE EVEN THOUGH THE PRISONER REGULARLY RECIEVED MEDICAL SERVICES.

I REQUIRE TO BE SEEN BY DR.MALETZ/ORTHOPEDIC OR SCHEDULE THIS PATIENT FOR AN EMERGENCY TREATMENT FOR ORTHOPEDIC AT UCONN. I AM IN EXTREME PAIN WITHOUT ANY ADEQUATE MEDICAL TREATMENT FOR MY CONDITION.

(EXHIBIT#(A5)

# Health Services Administrative Remedy- Level 1

Connecticut Department of Correction

CN 8901 Rev. 05/06/2021

| | |
|---|---|
| Inmate Signature: [signature] | Date: 8/14/2023 |

Deposit the completed form in the Health Services Administrative Remedies box

Section 4: Decision/Official Use ONLY- Do Not Write in the Space Below

| | |
|---|---|
| Date Received: 8/14/23 | HSAR# 4804 |
| Disposition: upheld | Date: 8/17/23 |

Reason: Staff responses must be printed or typed. Language must address both the problem and requested solution

- Patient and I are well known to each other
- Dr Williams and I have been updating regularly
- Initial management was for shoulder and referred pain to (R) UE
- Recommended exercises/space opening capsule did not resolve → MRI
- Narrowing is bony and chronic - not amenable to "medical" treatment - C5-6
- Combined rounds on 8/8/2022/8/11/22 noted on MRI
- When symptoms continued to worsen as chronic conditions may and were reported to me → 10 August 2023
- Did request pain OSS and placed to UConn for surgery expedite → Ortho Spine

## Health Services Administrative Remedy Decision

| | |
|---|---|
| ☒ This decision is not subject to further appeal | ☐ This matter may be appealed within 5 calendar days |
| Staff Name Print: Maletz | Title: Principal Physician - Ortho |
| Signature: [signature] MD/FACS | Date: 17 August 2023 |

(EXHIBIT#(A5)

INMATE REQUEST UNDER ADA

CHESHIRE.C.I.
C/O-DR.MALETZ,
OTHOPEDIC.
900 HIGHLAND AVENUE,
CHESHIRE,CT.06410.

OCTOBER 22nd,2024

RE:ADA-REASONABLE ACCOMODATIONS.

DEAR DR.MALETZ,

IN THE NAME OF THE FATHER,SON,AND,HOLY SPIRIT,AMEN.PEACE TO YOU.+

DR.MALETZ,

ON 10/22/2024,I RECEIVED FROM ADA-COORDINATOR/BLACKSTOCK REASONABLE ACCOMODATIONS I FILED ON:10/2/2024.
ADA-COORDINATOR/BLACKSTOCK DENIED MY REASONABLE ACCOMODATIONS DATED:10-17-2024,I REQUESTED REASONABLE ACCOMODATIONS FOR 2nd/SHIFT TIERMAN JOB, WHICH REQUIRES TWISTING,BENDING,REACHING,BUT,DUE TO MY DISABILITY ON THE L5-S1/LAMINECTOMY IN 1998,AND,MY C3-C6/DISC CERVICAL PROTRUSION I REQUIRE REASONABLE ACCOMODATIONS TO UNDER ADA-AMERICANS WITH DISABILITIES ACT.

ON 10/17/2024,ADA-COORDINATOR/BLACKSTOCK ARTICULATED THE FOLLOWING:

> INMATE GAWLIK,JA#138888,I SPOKE WITH DR,MALETZ,AND,REVIEWED YOUR MEDICAL CHART ABOUT ANY RELEVANT ISSUES ABOUT YOUR STRUCTURAL INTEGRITY,OR,ANY PHYSICAL BARRIERS YOU MAY HAVE TO PREVENT YOUR FROM PREFORMING NORMAL DUTIES IN THE CAPACITY OF A UNIT TIERMAN. INMATE GAWLIK THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN THE CAPACITY OF A TIERMAN.

DR. MALETZ,PLEASE,RESPECTFULLY,PROFESSIONALLY RESPOND THAT YOU ARTICULATED THAT THEIR IS NO DISABILITY IMPAIRMENT AS WE ARE PROSPECTIVELY UPON A SURGICAL INTERVENTION,WHICH CONTRADICTS THAT ADA-COORDINATOR THAT THIS INMATE/PATIENT HAS NOTHING MEDICALLY INDICATING THAT I AM IN A DISABILITY STATUS PRESENTLY. IN ADDITION,I AM ALSO A DISABLED,(QUALIFIED-INDIVIDUAL) UNDER THE ADA,TITLE II,REHABILITATION ACT OF 1973,WHICH THESE DOCUMENTS ARE IN MY MEDICAL FILE,AND,MASTER FILE.

DR.MALETZ,DID YOU ALLOW ADA-COORDINATOR WITHOUT MY PERMISSION TO REVIEW MY CONFIDENTIAL MEDICAL DOCUMENTS WITHOUT MY KNOWLEDGE?
THIS VIOLATES FEDERAL HIPPA CONFIDENTIALITY LAWS,AND,I ONLY PLACED MY DISABILITY,(QUALIFIED INDIVIDUAL DOCUMENTS),WITHIN REQUESTED REASONABLE ACCOMODATIONS UNDER THE ADA.

DR.MALETZ,PLEASE RESPECTFULLY RESPOND BELOW,IF,ADA-COORDINATOR/BLACKSTOCK CONSULTED WITH YOU ON MY CONDITION,AND,WHAT WAS YOUR RECOMMENDATION ON MY ADA-REASONABLE ACCOMODATIONS FOR SECOND SHIFT TIERMAN EMPLOYMENT?

RESPONSE:____________________

____________________

____________________

(EXHIBIT#(A6)

RESPECTFULLY SUBMITTED,

C.C.I.,900 HIGHLAND AVENUE,
CHESHIRE,CT.06410

GAWLIK,JAN,M.#138888/NB1-107

# Appeal of Administrative Decision

## Connecticut Department of Correction

CN 9606
REV
06/28/2021

'24 NOV 7 PM3:13

| | |
|---|---|
| Facility/Unit: C.C.I./NB1-107 | Date: 10/22/2024 |
| Inmate name: GAWLIK,JAN.M. | Inmate number: #138888 |

**SECTION 1: Select One (1) Appeal of Administrative Decision.**

**I am filing an Appeal of a (select one below):** *(Appeals must be filed within 15 days of notification of a decision.)*

| | | | |
|---|---|---|---|
| ☐ Disciplinary Action | | > | **Complete Section 3 below** |
| ☐ Special Management Decision | ☐ Classification Decision | > | **Complete Section 4 on reverse side** |
| ☐ Rejection of Publication | ☐ Rejection of Correspondence | > | |
| ☐ Security Risk Group Designation | ☒ ADA Decision | > | |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs | > | |

**SECTION 2:**
**INMATE ADVISEMENT**

- **Any inmate who files an Appeal of Administrative Decision must follow all instructions in Section 5 and 7 of Administrative Directive 9.6, "Inmate Administrative Remedies".**
- **Any Appeal of Administrative Decision which does not follow the instructions identified in the above mentioned sections will be rejected.**

**SECTION 3: DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY**

- You may file a Disciplinary Appeal ONLY if you have pleaded not guilty and have been found guilty at a disciplinary hearing.
- If so, complete this section; then complete Section 4 on the reverse side. >>>

| | | | |
|---|---|---|---|
| Offense: | | | Report date: |
| Facility where hearing was conducted: | | | Date of hearing: |
| Did you have an advisor? | ☐ yes ☐ no | If yes, name of advisor: | |
| Did you identify witness (es) to the investigator? | ☐ yes ☐ no | Did your witness (es) testify? | ☐ yes ☐ no |

Name(s) of any witness(es):

(EXHIBIT#(A7)

| **CONFIDENTIAL** (FOR OFFICIAL USE ONLY) | Inmate name: GAWLIK,JAN.M. | |
|---|---|---|
| | Inmate number: #138888 | Housing: NB1-107 |

## SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

THIS INMATE,(GAWLIK,JAN.M.),IS A DISABLED,(QUALIFIED-INDIVIDUAL),UNDER & PURSUANT TO SOCIAL SECURITY ACT,TITLE II,REHABILITATION ACT OF 1973,ADA-AMERICANS WITH DISABILITIES ACT,SINCE YEAR/1996,BY SOCIAL SECURITY ADMINISTRATIVE LAW JUDGE/H.H.CLARK,RULED ON:MAY 18th,2001.(ENCLOSED). PURSUANT & WITHIN THE:DOC/OAP-PLAN,THIS INMATE IS REQUIRED DURING HIS INCARCERATION & CONFINEMENT,DIRECTED TO OBTAIN A CORRECTIONAL/EMPLOYMENT WITHIN THE DIRECTED,OAP-PLAN. IN THE YEAR/2023,THIS INMATE REQUESTED COUNSELOR(S) TO PLACE GAWLIK ON TEIRMEN JOD LIST,BUT,DUE TO THE LENGTH OF THE JOB LIST WOULD HAVE TO WAIT AS FIRST COME,FIRST SERVE,NEXT IN LINE. ON OCTOBER 1st,2024,THIS INMATE AFTER A LONG WAIT,WAS OFFERED A 2nd/SHIFT TIERMEN EMPLOYMENT POSITION,BUT,INDICATED TO THE COUNSELOR THAT DUE TO MY DISABILITY,INFIRM & STRUCTURAL BODY NATURAL LIFE DEFICIENCIES AS A DISABLED(QUALIFIED-INDIVIDUAL),INMATE GAWLIK UNDER ADA-REASONABLE ACCOMODATIONS REQUIRES MODIFIED & ACCOMODATIONS WITHIN THE TIERMAN EMPLOYMENT POSITION AS DUE TO DISABILITY EXTREME PAIN THERE ARE AREAS THAT THIS INMATE CANNOT PERFORM BEING PERMANENTLY DISABLED PRIOR TO INCARCERATION,AND,INCARCERATED. ON OCTOBER 2nd,-2024,INMATE/GAWLIK ADA-REASONABLE ACCOMODATIONS REQUEST CONSISTED OF THE ADA-ACCOMODATIONS TO PERFORM 2nd/SHIFT TIERMEN EMPLOYMENT OF GAWLIK ONLY CAN FERFORM:SWEEPING THE TIER,BOTTOM TIER ONLY,AND,WIPE TABLES AFTER INCARCERATED HAVE COMPLETED THEIR MEALS ON SECOND SHIFT,GAWLIK UNABLE TO CLEAN THE BLOCK SHOWERS,AND,MOP THE FLOORS WHICH CONSISTS OF CONTINUAL TWISTING, BENDING,REACHING WITH CONTINUAL FORCE WHICH CAUSES THIS DOCUMENTED DISABLED INDIVIDUAL EXTREME PAINFUL CONDITION,DUE TO NO PHYSICAL THERAPY IN DOC GAWLIK MUST EXERCISE AT LEISURE INTERVALS TO RETAIN QUALITY OF LIFE WHICH IS REQUIRED FOR PSYCHOLOGICAL/MENTAL/PHYSICAL ATTRIBUTES TO CURTAIL DETERIORATION OF HUMAN BEING REQUIREMENT OF LIFES NEEDS. (CONT...)------------>

| Inmate signature: [signature] | Date: 10/22/2024 |
|---|---|

- **Deposit this form in the "Administrative Remedies" box.**

## SECTION 5: DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: 11/7/24 | | |
|---|---|---|
| Disposition: Denied | Date of Disposition: 11/26/24 | |

Reason:

The re[illegible]ted review of your local denial for j[illegible]rogram accommodation is completed. A review of the original in[illegible]ation exchanged between local ADA [illegible] medical specialist revealed no need for accommodation to perform [illegible]man activities. Further review of your [illegible]ted OAP requirements show this as a recommendation and not a [illegible]rement or stipulation. There is no evide[illegible] this time to accommodate tier man duties should you cho[illegible] to take the offer.

[X] This decision is not subject to further appeal.

| Print Name: Colleen Gallagher | Title: DRC |
|---|---|
| Signature: [signature] | Date: 11/26/24 |

(EXHIBIT#(A7)

APPEAL OF ADMINISTRATIVE DECISION

NAME:GAWLIK,JAN.M.
DATE:10/22/2024.
LOC#NB1-107.

CONT...,

THIS INMATE/PATIENT HAS THE FOLLOWING DOCUMENTED DISABILITIES THAT ARE PERMANENT AND CONSIST OF:,(L5-S1-LAMINECTOMY OF LOWER BACK,DDD-DEGENERATIVE DISC DESEASE,C5-C6-CERVICAL DISC PROTRUSION,TITANIUM ROD LEFT LEG FROM KNEE TO ANKLE WITH SCREWS),THAT ARE PERMANENT IN GAWLIKS NATURAL LIFE OF DISABILITY,(QUALIFIED INDIVIDUAL).
ON 10/17/2024,THIS INMATE RECEIVED FROM ADA-COORDINATOR INTENTIONAL DISCRIMINATION,AND,WAS:DENIED,ADA-REASONABLE ACCOMODATION WITH A DETRIMENTAL,AND,INCOHERANT MEDICAL REVIEW THAT IS OUTSIDE OF GAWLIKS DISABILITY DOCUMENTS. ADA-COORDINATOR DENIAL LANGUAGE AS FOLLOWS:INMATE GAWLIK,JAN#138888,I SPOKE WITH DR.MALETZ,AND,REVIEWED YOUR MEDICAL CHART ABOUT ANY RELEVANT ISSUES ABOUT STRUCTURAL INTEGRITY OR,ANY PHYSICAL BARRIERS YOU HAVE TO PREVENT YOUR FROM PERFORMING NORMAL DUTIES IN THE CAPACITY OF A UNIT TIERMAN. INMATE GAWLIK THERE IS NOTHING MEDICALLY INDICATING THAT YOU CAN NOT PERFORM YOUR DUTY IN THE CAPACITY OF A TIERMAN. HERE,THIS INMATE IS ALLEGING THAT ADA-COORDINATOR POSSIBLE CONVERSATION IS OUTSIDE THE SCOPE OF MY MEDICAL CONDITION. DR.MALETZ,HAS ME SCHEDULED FOR POSSIBLE SURGERY,AS ALSO MY DISABILITY DOCUMENTS ARE WITHIN MY MASTER FILE, AND,MEDICAL FILE,WHICH REFLECTS CONTRADICTION ON THE DEFICIENT RESPONSE BY ADA-COORDINATOR/BLACKSTOCK. MY SUBMITTED DOCUMENTS,SOCIAL SECURITY,DOCTOR NOTES ALL REFLECT MY DISABILITY CONDITION,AND,INTENTIONALLY IGNORED FOR REASONABLE ACCOMODATION BY ADA/BLACKSTOCK. IN ADDITION,THE ADA-BLACKSTOCK SUPERCEEDED ANY TYPE PERMISSION FROM ME TO REVIEW MY MEDICAL RECORDS WHICH IS A HIPPA VIOLATION,AS ADA/BLACKSTOCK ARTICULATED THAT HE REVIEWED MY MEDICAL CHART ABOUT RELEVANT ISSUES,INTURN,WITHOUT MY PERMISSION,AND,MY PERMISSION GIVEN TO DR.MALETZ TO BE ABLE TO ALLOW ADA/BLACKSTOCK VIOLATES HIPPA PRIVACY LAWS FEDERAL JURISDICTION. ADA/BLACKSTOCK OBTAINED THE INCORRECT SIGNATURE OF AUTHORITY WHICH IS THE UNIT-ADMINISTRATOR NOT THE DEP.,WARDEN/CARLOS NUNEZ.WHICH IS IMPROPER UNDER DUE PROCESS AND LANGUAGE WHICH REQUIRES UNIT ADMINISTRATOR,OR,WARDEN-REIS,WHICH WAS NOT DONE HERE. THE CIVIL RIGHTS ACT OF 1991,REQUIRES GOOD FAITH EFFORTS,IN CONSULTATION WITH THE PERSON WITH THE DISABILITY WHICH WAS NOT DONE HERE. THE CIVIL RIGHTS ACT OF 1964.,(SECTION#1977)(42 USC§1981),PROVIDES FOR THE RECOVERY OF COMPENSATORY/PUNITIVE DAMAGES IN CASES OF INTENTIONAL VIOLATIONS OF TITLE II, ADA OF 1990,SECTION 501 OF THE REHABILITATION ACT OF 1973.THIS INMATE PURSUANT (42 USC§1981),WAS DENIED EQUAL RIGHTS UNDER THE LAW,DISCRIMINATING AGAINST A DISABLED INDIVIDUAL WITHOUT REASONABLE ACCOMODATION DOCUMENTED,CONTRADICTING A INTENTIONAL DISCRIMINATION BY ADA-BLACKSTOCK. THEREFORE,THIS DISABLED INMATE GAWLIK APPEAL/COMPLAINT CONCERNING JOB DISCRIMINATION,OR,EXCLUSION BASED ON DISABILITY,CITING THE,"PUBLIC ENTITY",PROVISIONS,SINCE EMPLOYMENT IS A PROGRAM SUBJECT TO THE TITLE II PUBLIC ENTITY PROVISIONS. (NORTHROP V.CARUCCI,2007 WL-685173,*4(D.CONN.,MARCH 5th,2007).IN CASE OF:(PENNSYLVANIA DEPT.OF CORRECTIONS-V.YESKEY,524 U.S.206(1998):HELD;SUPREME COURT,JUSTICE SCALIA,THAT TITLE II OF THE ADA,PROHIBITING,"PUBLIC ENTITY",FROM DISCRIMINATING AGAINST,"QUALIFIED INDIVIDUAL WITH A DISABILITY",ON ACCOUNT OF THAT INDIVIDUALS DISABILITY,APPLIED TO INMATES IN STATE PRISONS.(ENCLOSED). ADA/BLACKSTOCK AS AN ADMINISTRATOR WITHIN A FEDERALLY FUNDED,"PUBLIC-ENTITY",IS DENYING THIS INMATE GAWLIK A PROGRAM UNDER THE CONNECTICUT DEPT.OF CORRECTIONS,THUS,VIOLATING MY ADA RIGHTS. IN CASE OF: U.S. V.GEORGIA,546 U.S.151(2006):HOLDS;TITLE II OF ADA/ACT VALIDLY ABROGATES STATE SOVEREIGN IMMUNITY WHICH CREATES A PRIVATE CAUSE OF ACTION FOR DAMAGES,AND, SECTION,(42 USC§12202-STATE IMMUNITY),CREATES PRIVATE ACTION AGAINST INDIVIDUALS FOR DISABILITY VIOLATIONS. GAWLIK IS INFORMING ALL ADMINISTRATORS THAT I WILL REQUIRE TO FILE ASSET LIENS,FREEZE MONETARY ASSETS,ETC,OF ALL INDIVIDUALS IN THEIR PRIVATE CAPACITY WITHIN AN ADA CIVIL ACTION IN U.S.DISTRICT COURT. GAWLIK REQUESTS APPEAL RECONSIDERATION UNDER DUE PROCESS WITHOUT ADA-DISCRIMINATION WITHIN HIS PROSPECTIVE PROGRAM JOB EMPLOYMENT AS ADA-TIERMAN.

RESPECTFULLY SUBMITTED,

C.C.I.,900 HIGHLAND AVENUE,
CHESHIRE,CT.06410

(EXHIBIT#(A7)

[signature]
GAWLIK,JAN.M.#138888

STATE OF CONNECTICUT
DEPARTMENT OF CORRECTION

November 26, 2024
Cheshire CI

Jan Gawlick 138888,

Mr. Gawlick,

This this letter serves as a supplemental document to the administrative appeal submitted at Cheshrie CI. In your appeal, you mention Social Security Administration, ADA, Civil Rights, procedural and HIPAA "violations". It is unclear if you have addressed these allegations at your facility. Since it would be a legal determination if violations have actually occurred I cannot state one way or the other but I will address what I can in this letter.

Social Security:
Thank you for providing the supplemental information. The documents are related to employment, which is noted there as "*substantial gainful activity*". The activities of a tierman are not considered substantial or gainful, are listed as a level 1 classification and does not require special training/ skills. This position is spread among three inmates for cleaning tables, showers and passing food trays. The job is also spread across time, meaning non-consistent engagement in the activity during a given shift affording you the opportunity to rest between activities, this is more than adequate consideration. However, if this were a position such as food services worker or outside worker requiring you to be on your feet or constantly engaged in substantial efforts for an entire shift the answer may have been different.

HIPAA and Procedure:
*The Unit ADA Coordinator upon receipt of such request shall make arrangements with health services to review, assess, and verify the reported functional impairment to help determine the need for reasonable accommodation.*

I will remind ADA coordinators to be conscientious of language so as not to be misunderstood. They do not review the health chart but consult with various health care providers such as medical, orthopedics, dental, mental health etc. for corroborating information; this is the language of the directive. Your use of this directive means you have read and understood it. ADA coordinators do not have access to medical files but it is in keeping with the directive that the providers MUST share information as appropriate to weigh against other facility factors to assist facility administrators in deciding if such an accommodation is warranted, safe and feasible and consider alternatives as appropriate. In this case your consulting physician placed an order for surgical review *at your request for surgical solution.*


(EXHIBIT#(A7)

Facility administrators may have a designee as needed and a signature by such a designee would not be inappropriate. If you chose not to accept the tier man slot, this can be done without prejudice.

ADA / Civil Rights Discrimination:

It is unclear in your document where or when such discrimination occurred as you have been offered a program / job which is not required. The positon offered to you was one in which your providers felt you were capable of doing that would not require an accommodation. As stated earlier if this were a position such as food services worker or outside worker requiring you to be on your feet or constantly engaged in substantial efforts for an entire shift the answer may have been different.

Best of luck on your decision regarding the offered tier man duties. As you have not yet accepted or attempted to try out this position, I encourage you to do so and work with your unit manager to make sure it is a good fit.

Regards,

*Colleen Gallagher*

Colleen Gallagher, MA, CADAC, CCHP,
Disability Rights Coordinator, Compliance


(EXHIBIT#(A7)

STATE OF CONNECTICUT
*DEPARTMENT OF CORRECTION*
CHESHIRE CORRECTIONAL INSTITUTION
OFFICE OF INVESTIGATION AND INTELLIGENCE
900 HIGHLAND AVENUE
CHESHIRE, CT 06410

To: Gawlik, Jan #138888

From: Administrative Captain

Date: 1/08/2024

Re: Preservation of video evidence.

Your request to preserve camera footage from North 1 on 12/19/24 from 7:40am – 8:00am was completed. The following disc was secured into evidence:

**CCI-VP-25-032**

(ADA-COORDINATOR/BLACKSTOCK-INTIMIDATING/GAWLIK DUE TO DISABILITY)

In accordance with Connecticut General Statute, 1-210, b. (18) Any access to the aforementioned videodisc will require a subpoena based on the risks to safety, security and sensitive nature of its contents.

(EXHIBIT#(A8)

# Inmate Request Form

Connecticut Department of Correction

CN 9601 REV 04/30/2021

Inmate name: Gawlik, Jan
Inmate number: #138888

Facility/Unit: C.C.I.
Housing unit: NB1-107
Date: 12/19/24

Submitted to: FOI - Lamare @ Cheshire C.I.

Request: Pursuant Dir. 6.9 / Preservation, (FOI-Request)
I Require Video Preservation on Below as follows:

Time: 7:40 AM - To - 8:00 AM.

Date: 12/19/24.

Location: officer Bubble / Stairs Area, N.S.E.W., of Inmate Gawlik speaking to: Capt. -

continue on back if necessary

Previous action taken: Blackstock @ NB1.

Reason: Litigation.

Respectfully,

Note: Please Articulate, - Times & Date!

Gawlik #138888 / N1-07

continue on back if necessary

Acted on by (print name): C/O Korkowski
Title:

Action taken and/or response:

Your request is acknowledged and you will be notified when preservation is completed.

1/2/2025 FOI - Lamare: Please, Respectfully Forward The Status of Above Video Preservation, due to Pending Litigation Required Timely! Thank you Gawlik #138888 N1-07

continue on back if necessary

Staff signature:
(EXHIBIT#(A8))
Date:

# STATE OF CONNECTICUT

*DEPARTMENT OF CORRECTION*

CHESHIRE CORRECTIONAL INSTITUTION
900 HIGHLAND AVE.
CHESHIRE, CT 06410

CCS MOLINA
UNIT MANAGER

PHONE: (203) 651-6202

**TO:** 1st Shift - Commander, Lieutenants and North Block 1 Housing Unit Officers

**FROM:** Counselor Supervisor Anderson

**DATE:** **Updated** ~~7/26/21~~ 12/28/23

**SUBJECT:** I/M Gawlick, Jan #138888 NB1-~~06~~ 07 cell

*****************************************************************************

Please be advised that until further notice:

Please release I/M Gawlik #138888 NB1-~~106~~ 107 **15 minutes prior** to the release of his out of cell time to allow for ample time to get into the first floor handicap shower, for a shower on 1st shift only. In the event that showers are not conducted until second shift, the same 15 minute accommodation shall be afforded to him. Said inmate had previously been approved for an ADA (American with Disabilities Act) accommodation and will require the extra time to get into and out of the shower.

Inmate Gawlik has been notified of the decision, and a copy of this notice has been provided to him. Also, per AD 10.19, a copy of this notice has been placed and logged in section 6 of his master file.

The above mentioned should be adhered to barring any institutional emergency or exigent circumstances. This accommodation shall be upheld in the event of a modified schedule for emergency staffing protocol.

Thank you in advance for your immediate cooperation.

Counselor Supervisor Anderson

Cc: Unit Officers Station
Lts. Office
Shift Commander
ADA Liaison
Warden
Unit Manager
Correctional Health Services Program Director
Master file, Section 6

(EXHIBIT#(A8)

# Reasonable Accommodation Management Plan

## Connecticut Department of Correction

CN 101903
REV 9/24/21

| | |
|---|---|
| Facility/Unit: Cheshire Correctional Institution | Date: 10/26/2021 |
| Inmate name: Jan Gawlik | Inmate number: 138888 |

***The following accommodations /devices shall be recognized for the above inmate***
*(circle/check all that apply)*

| Area/Topic | Accommodation | | |
|---|---|---|---|
| Medical Devices | **CPAP, braces, Wheel chair, cane, walker, orthopedic device** Heading aids | | |
| Housing | ☐ bottom /top tier | ☐ MH housing | ☐ accessible housing |
| Cell Status | ☐ Single Cell | ☐ Cellmate (Restrictions): | ☐ Cellmate (No restrictions) |
| Transport | Front cuffing soft cuffing flex cuffing no black box wheelchair van | | |
| Auxiliary Aids | walking stick, braille document, screen reader, magnifying lens, inmate buddy / walker | | |
| Self-care | Raised toilet seat, accessible shower grab bars, feedback | | |
| Communication needs | TTY / VRI / VRS / amplifier /interpreter | | |
| Other | Chub Cuffs to be utilized, Facility Transport Only. | | |

### Inmate Acknowledgement

- I acknowledge that the above accommodations currently meet my needs.
- I acknowledge that I can request changes if my condition change
- I acknowledge that my plan will be reviewed if and when I change facilities to be adapted as needed

| | |
|---|---|
| Inmate Name: Jan Gawlik | Inmate Number: 138888 |
| Signature [signature] | Date: 10/27/2021 |

### Facility ADA Coordinator

Staff Comments:
Front cuffing no black box
Chub Cuffs to be utilized, Facility Transport Only.

| | |
|---|---|
| Name (print): CCS Manick | Title: CCS |
| Signature: [signature] | Date: 10/27/2021 |

(EXHIBIT#(A8)

# Request for Reasonable Accommodations

Connecticut Department of Correction

CN 101902
REV 9/24/21

| | |
|---|---|
| Facility/Unit: CHESHIRE.C.I./NB1-106 | Date: 10/8/2021 |
| Inmate Name: GAWLIK,JAN.M. | Inmate Number: #138888 |

Describe the condition(s) and situation (e.g. unit, cell, program, communication or daily living activity) that present a need for accommodation(s):

N/A

(MEDICAL DOCUMENTATION ENCLOSED,DISABILITY,MRI REPORTS,TREATMENT)

Type(s) of service or accommodation requested/preferred: THIS DISABLED "QUALIFIED-INDIVIDUAL" IS REQUIRING REASONABLE ACCOMODATIONS, THAT NO BLACK BOX BE USED AND THAT FRONT CUFFING BE ONLY IMPLEMENTED. PLAINTIFFS DISABILITY DOCUMENTED ENTAILS, ON BOTH NECK @ C5-6/PARACENTRAL DISC HERNIATION IS PRESENT, AND LOWER BACK @ L5-S1, CENTRAL DISC HERNIATION/DDD-DEGENERATIVE DISC DISEASE IS PRESENT. PLAINTIFF HAS HAD A LAMENECTOMY/SURGERY ON LOWER BACK TO NO AVAIL, AND IS DISABLED UNDER SOCIAL SECURITY DISABILITY ACT. PLAINTIFF REQUIRES FUTURE MRI'S & DOCTOR TREATMENT. REQUIRING DUE TO EXTREME PAIN THAT NO BLACK BOX, ONLY FRONT CUFFING BE UTILIZED FOR MEDICAL TREATMENT AND COURTS DURING TRANSPORTATION. THANK YOU.

| | |
|---|---|
| Inmate Signature: [signature] | Date: 10/8/2021 |

**RETURN THIS FORM TO THE UNIT ADA COORDINATOR**

YOUR REQUEST HAS BEEN:

☐ Approved as requested ☐ Modified ☒ Referred for further review ☐ Denied

Comments:
Under Review. Initial document (CN101903) submitted not Correct Document. Review initiated, No up coming medical trip Noted in system which place Review Under time Constraints.

ADA Coordinator Name (print): CCS Mancle

| | |
|---|---|
| Signature: CCS [signature] | Date: 10/8/2021 |

**REASONABLE ACCOMMODATION DETERMINATION**

☐ Approved as requested ☒ Modified (see comments below) ☐ Denied (see comments below)

Comments:
See Attached (CN101903) Accommodation Management Plan

| | |
|---|---|
| Unit Administrator: CCS [signature] | Date: 10/26/2021 |

If denied an accommodation request you have the right to appeal the decision in accordance with Administrative Directive 9.6, Inmate Administrative Remedies

(EXHIBIT#(A8)