**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JAN GAWLIK,
     Plaintiff,

       v.                                             Case No. 3:25-cv-467 (OAW)

COLLEEN GALLAGHER, et al.,
     Defendants.

## <u>INITIAL REVIEW ORDER</u>

Self-represented Plaintiff Jan Gawlik, a sentenced inmate at Cheshire Correctional Institution ("Cheshire"),[1] has filed a complaint alleging that prison officials at Cheshire violated his federally protected rights by failing to provide reasonable accommodations for potential prison employment.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity, or against an officer or employee of a government entity.  28 U.S.C. § 1915A(a).  Upon review, the court must dismiss the complaint, or any portion thereof, which is frivolous or malicious, which fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune therefrom.  *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

Accordingly, the court has reviewed all factual allegations in the complaint and has conducted an initial review.  The court's conclusions are as follows.

---

[1] Plaintiff was sentenced to sixty years' imprisonment on January 9, 2015, and is currently housed at Cheshire.  *See* DOC, *Offender Information Search*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=138888 (last visited June 23, 2026).  The court may take judicial notice of this website.  *See Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC Offender Information Search).

I.    **FACTUAL BACKGROUND**

The court does not set forth all the facts alleged in the complaint, but summarizes the basic factual allegations for context.

Before he was incarcerated, Plaintiff sustained a serious spinal injury which left him permanently disabled.  He continues to suffer pain and has limited mobility as a result of his spinal condition.  Since his incarceration, the Connecticut Department of Correction ("DOC") has treated him in relation to his impairment.[2]

After he was sentenced, DOC created an Offender Accountability Plan ("OAP") for Plaintiff.  The OAP is a way of tracking an inmate's participation in programs and services while incarcerated.  Relevant here, Plaintiff's OAP recommends that he maintain a job assignment.  According to the OAP, failure to comply with its recommendations "shall negatively impact [Plaintiff's] earning of Risk Reduction Earned Credit (RREC) and/or chances of DOC supervised community release and/or parole."  ECF No. 1 at 48.

In early 2024, Plaintiff sought employment within DOC to satisfy his OAP and was assigned a job as a tierman, which role is responsible for basic cleaning and meal distribution within a unit.   Upon learning this, Plaintiff immediately requested accommodations under the Americans with Disabilities Act ("ADA"). He submitted another request the next day, too, indicating he could sweep the bottom tier and wipe the tables, but he could not clean the showers or mop the floors without pain.

---

[2] At times, Plaintiff appears to challenge the adequacy of his treatment, but if he intends to assert such claims, he has not done so clearly enough to warrant review.  The court also notes that Plaintiff's healthcare while in prison is the subject of another lawsuit before the undersigned, *See Gawlik v. Maletz,* Case No. 25-cv-1601 (OAW), and so any such claims likely would be dismissed as duplicative.

2

Defendant Blackstock, Cheshire's ADA Coordinator, responded that he had spoken with Defendant Maletz, Plaintiff's treating physician, and had reviewed Plaintiff's medical chart, and saw no medical reason why Plaintiff could not perform the tasks of a tierman.  Plaintiff appealed to the warden.  Deputy Warden Nunez responded that "[Plaintiff's] request for reasonable accommodations was denied."

Plaintiff appealed Deputy Warden Nunez's response to Defendant Colleen Gallagher, DOC's Disability Rights Coordinator.  She responded in November 2024, agreeing with Defendant Blackstock.  She explained that the information from Dr. Maletz did not indicate that he should need accommodations to perform the duties of a tierman.  She further explained that tierman duties are spread across three inmates, and that Plaintiff would have opportunities to rest between tasks.  She also noted that Plaintiff was free to decline the position, since maintaining employment was only recommended in his OAP, not required.

Plaintiff also asserts that Defendant Blackstone told him that he should not be considered disabled.

## II.    **DISCUSSION**

Courts must treat pro se complaints with "special solicitude," which means "interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s].'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 475, 474 (2d Cir. 2006)) (per curiam) (alterations in original).  The strongest claims suggested by Plaintiff's allegations are claims under the ADA and the

Rehabilitation Act ("RA"), a First Amendment retaliation claim, and a conspiracy claim.[3] The court analyzes each in turn.

### A. ADA/RA

The standard of review for claims under Title II of the ADA and § 504 of the RA "are generally the same . . . ."[4] *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). To establish a prima facie violation under the ADA or RA, Plaintiff must show 1) that he is a qualified individual with a disability; 2) that Defendants are subject to the acts; and 3) that he was denied participation in or benefit from Defendants' services, programs, or activities, or that he was otherwise discriminated against because of his disability. *Id.* at 72. There are "three available theories" of discrimination which can establish the third prong of an ADA or RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir.2003)) (internal quotation marks omitted).

---

[3] Plaintiff also invokes other statutes constitutional provisions in the introduction to his complaint, *see* ECF No. 1 at 2, but these passing references are insufficient to state a claim, as Plaintiff himself has been warned. *Gawlik v. Reis*, No. 3:23-CV-1194 (OAW), 2025 WL 744270, at *2 n.5 (D. Conn. Mar. 7, 2025) (noting that "Plaintiff hereby is on notice that listing a statute or constitutional provision is not sufficient to state a claim for relief under that statute or provision. While the court addresses all of Plaintiff's claims in this order, *it will not continue to do so if Plaintiff fails to comply with this instruction in future filings*.") (emphasis added) (internal citation omitted). Thus, Plaintiff was on notice before filing the instant complaint that he could not state a claim by mere reference, and so the court will ignore any unsupported citations.

[4] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 n.13 (D. Conn. June 5, 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (considering ADA and RA claims together). Accordingly, "we treat claims under the two statutes identically." *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272) (internal quotation marks omitted).

"[T]he ADA defines 'disability' to include, *inter alia*, 'a physical or mental impairment that substantially limits one or more major life activities.'" *Hamilton v. Westchester Cnty*., 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). The term "'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA,' and 'is not meant to be a demanding standard.'" *Id.* (quoting 28 C.F.R. § 35.108(d)(1)(i)). Reaching, lifting, bending, and working all are explicitly noted "major life activities" in federal regulations. 28 C.F.R. § 35.108(c)(1)(i).

On initial review, the court presumes Plaintiff is a qualified individual whose spinal condition substantially limits him in the major life activities of reaching, lifting, bending, and working. *See Lenti v. Connecticut*, No. 3:20-CV-127 (SRU), 2020 WL 2079462, at *3 (D. Conn. Apr. 30, 2020) (assuming, for purposes of initial review, that plaintiff "is a qualified individual whose back injury substantially limits him in his major life activities of ambulating, standing, sitting, and caring for himself."). Thus, Plaintiff's allegations satisfy the first requirement of an ADA claim.

Plaintiff's allegations also satisfy the second requirement of an ADA claim. *See id.* (noting that "[s]tate prisons are public entities within the meaning of the ADA"); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'") (quoting 42 U.S.C. § 12131(1)(B)).

Plaintiff's allegations satisfy the third requirement of an ADA claim, too. The

Supreme Court of the United States has taken a broad view of the phrase "services, programs, or activities." *See id.* ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in').").  The court accepts for the purpose of initial review that prison employment fits within this broad definition.

The court also finds that Plaintiff adequately has alleged unlawful exclusion from this benefit insofar as DOC has refused to reasonably accommodate his disability.  "A reasonable accommodation must provide effective access to prison activities and programs." *Wright*, 831 F.3d at 73.  "An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him."  *Id.*

It appears that Plaintiff sought the specific accommodation of being excused from cleaning the showers or mopping the floors because those actions would cause him back pain.  Prison officials failed to accommodate Plaintiff by exempting him from these tasks. Read liberally, the complaint sufficiently alleges that prison officials' failure to make reasonable accommodations "deter[ed] the plaintiff from attempting to access the services otherwise available to him."  *Id.*  Accordingly, Plaintiff's claims under the ADA and the RA may proceed for further development of the record.

### B. First Amendment Retaliation

Plaintiff appears to assert a First Amendment retaliation claim insofar as he alleges that he was denied his requested accommodation because he has filed several civil

6

actions against DOC staff. *See* ECF No. 1 at 16.  To state a First Amendment retaliation claim, an inmate must plausibly allege: (1) that he engaged in protected speech or conduct, (2) that the defendant took adverse action against him, and (3) that the adverse action was the result of a retaliatory motive, *i.e.*, that there was a causal connection between the protected conduct and the adverse action.  *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).  The United States Court of Appeals for the Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'"  *Id*. at 295 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003)).

Both grievances and lawsuits are considered protected speech, *see Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (accepting that filing a lawsuit or grievance is constitutionally protected activity), and so the court accepts that Plaintiff has satisfied the first element of a retaliation claim.  But even if the denial of accommodations could be considered an "adverse action," Plaintiff alleges nothing indicating that the denial was causally connected to his lawsuits.  Accordingly, this claim must be dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

## C. <u>Conspiracy</u>

Plaintiff also asserts a conspiracy claim, presumably pursuant to 42 U.S.C. § 1985.  Such a claim requires a plaintiff to "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve

the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)).  "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Brook v. Ruotolo*, No. 23-1339, 2024 WL 3912831, at *3 (2d Cir. Aug. 23, 2024) (summary order) (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (internal quotation marks omitted).

Plaintiff has alleged no facts suggesting that any defendants coordinated with one another to violate his federally-protected rights.  His conspiracy claim is based on only his conclusory assertions that a conspiracy existed between certain Defendants.  But such conclusory assertions cannot support an inference that the parties entered into an agreement to violate his civil rights.  Accordingly, all claims based on an alleged conspiracy between Defendants are dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

### D. <u>Other Claims</u>

Plaintiff suggests several claims in passing that may be disposed of summarily. First, he claims that Defendant Blackstock and Defendant Maletz violated the Health Insurance Portability and Accountability Act ("HIPPA") when they reviewed his medical chart.  But "HIPPA does not create a private right of action and cannot support a claim under section 1983." *Jordan v. Dep't of Corr.*, No. 3:24-CV-298 (VAB), 2024 WL 4581654, at *3 n.5 (D. Conn. Oct. 25, 2024).  Next, Plaintiff appears to claim that Defendant Nunez violated his right to procedural due process by signing off on Defendant

Blackstock's denial of ADA accommodations.    But his argument appears to be that Defendant Nunez violated prison policy insofar as he did not have authority to endorse the denial of accommodation, and "an allegation that a prison official did not adhere to a . . . regulation or prison directive or policy does not rise to the level of a violation of a federally or constitutionally protected right." *Youmans v. Roy*, No. 3:22-CV-1650 (MPS), 2023 WL 8372825, at *6 (D. Conn. Dec. 4, 2023).  Finally, Plaintiff claims that Defendant Blackstock harassed him, but "[v]erbal threats and harassment are not actionable under § 1983, no matter how reprehensible, inappropriate, and unprofessional they may seem, unless the harassment is accompanied by actual injury." *Timm v. Faucher*, No. 3:16-CV-00531 (VAB), 2017 WL 1230846, at *5 (D. Conn. Mar. 31, 2017).  Therefore, these claims all must be dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

### E. <u>Relief Sought</u>

Plaintiff sues all defendants in their official and individual capacities, and he seeks declaratory and injunctive relief and damages.  But Plaintiff may not pursue damages from any Defendant in their official capacity because they are all state employees. *Quinones v. Quiros*, No. 3:24-CV-1805 (OAW), 2025 WL 1445860, at *2 (D. Conn. May 20, 2025) ("DOC employees may not be sued in their official capacity for money damages in federal court.").  And as to declaratory relief, "if Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion*

*v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL 6050054, at \*4 (D. Conn. Sept. 15, 2023).  Accordingly, any claim for declaratory relief must be dismissed.

Thus, Plaintiff may pursue claims for injunctive relief against Defendants[5] in their official capacities, and claims for damages against Defendants in their personal capacities.

IV.    **ORDERS**

For the reasons stated above, it hereby is ordered as follows:

1.  This action may proceed on Plaintiff's ADA/RA claim against all Defendants.

2.  All other claims are dismissed as implausible.

3.  Plaintiff may amend the complaint on or before **August 24, 2026.  An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.**  The court will review any amended complaint to determine whether it may proceed to service of process.

4.  If Plaintiff wishes to proceed only on the claims noted above, he may file a

---

[5] Though a plaintiff need not show personal involvement to seek injunctive relief against a defendant sued in their official capacity, "the official sued must still have 'a direct connection to, or responsibility for, the alleged illegal action.'"  *Inkel v. Connecticut*, No. 3:14-CV-01303 MPS, 2015 WL 4067038, at \*4 (D. Conn. July 2, 2015) (quoting *Murray v. Breslin*, No. 13–CV–3239 CBA LB, 2015 WL 502225, at \*6 (E.D.N.Y. Feb. 5, 2015)).  It is not clear whether Dr. Maletz was directly connected to or responsible for refusing to accommodate Plaintiff, but the court will allow the remaining claim to proceed against him for further development.

10

notice on the docket saying so, at which point the case immediately will proceed to service. If nothing is filed on the docket by **August 24, 2026,** the court will presume Plaintiff wishes to proceed only on these claims.

5. If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court.  Failure to do so can result in dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendant or defense counsel of his new address.

6. Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Under local court rules, discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this  23rd day of June, 2026.

_____/s/_____

Omar A. Williams
United States District Judge

11